# TANNER v. PROVO BENCH CANAL AND IRRIGATION COMPANY et al.

No. 2164. Decided December 26, 1911 (121 Pac. 584).

1. WATERS AND WATER COURSES—IRRIGATION—USE OF ANOTHER'S CANAL—POINT OF DIVERSION. In a proceeding to obtain permission to enlarge irrigating canals of another person under Comp. Laws 1907, sec. 1288x22, it is no objection to the maintenance of the proceeding that plaintiff's right is a right to divert water at a point above the point of diversion of defendants' canals, where it appears that plaintiff can divert his water at the point where the canals divert water. (Page 113.)

2. WATERS AND WATER COURSES—IRRIGATION—USE OF ANOTHER'S CANAL—WHO MAY MAINTAIN PROCEEDINGS. A decree in a proceeding under Comp. Laws 1907, sec. 1288x22, to obtain permission to enlarge the irrigating canal of another sufficiently to carry

water for the plaintiff, which grants the relief asked for, is not erroneous because it appears that the plaintiff has not an actual and subsisting right to the amount of water he seeks to convey through such canals, where it appears that the applicant has some water and has made application to appropriate other unappropriated water, since all that need be shown in such a proceeding is that plaintiff has water, or has applied in good faith therefor.    (Page 113.)

3.  WATERS AND WATER COURSES—IRRIGATION—USE OF ANOTHER'S CANAL—WHO MAY MAINTAIN PROCEEDINGS.    A person is not precluded from proceeding under Comp. Laws 1907, sec. 1288x22, to obtain permission to enlarge the irrigation canal of another because his application for unappropriated water was approved by himself in his official capacity as state engineer, since the statute gives the right to any person interested to protest any application, and the courts in a proceeding under section 1288x22 have no power to pass upon and determine the water rights of the plaintiff.    (Page 114.)

4.  WATERS AND WATER COURSES—IRRIGATION CANALS—ENLARGEMENT—EVIDENCE.    In a proceeding to enlarge an irrigation canal of another under Comp. Laws 1907, sec. 1288x22, where it is undisputed that defendants have for many years successfully maintained the canals sought to be enlarged and have been able to make them impervious to water, a finding that the canals are such as to admit of enlargement and increased carrying capacity, without detriment or injury thereto, is not unsupported by the evidence, since it is based on actual experience, and not on conjecture or speculation.    (Page 116.)

5.  EMINENT DOMAIN—COMPENSATION—MEASURE AND AMOUNT—TAKING EASEMENT.    In a proceeding to obtain permission to enlarge the irrigation canal of another under Comp. Laws 1907, sec. 1288x22, it appeared that defendants did not own the land traversed by the canals, but merely owned an easement for the canals.  . There were no allegations in the complaint or answer as to the value of the property affected or the amount of damages to defendant by the enlargement of the canals, and no direct evidence of the amount of damages, but there was evidence of the cost of construction and maintenance of the canals, the character of the soil, and the possibility of loss by seepage or percolation, if the sides or bottom of the canal were broken.  The court required the plaintiff to give a bond to cover any damages to defendants from the work of enlargement, and fixed defendants' damages, except such as might arise from defective or insufficient enlargement, at the nominal sum of one dollar.  *Held*, that this did not deprive defendants of their property without compensation, especially in view of the bond protecting them from any damage arising

out of the work, since, when property taken for a public use is an easement which can be used only for a particular purpose, the measure of damages is the extent to which the easement is rendered less valuable for the use to which it is devoted, and there was no proof that defendants' canals would be any less valuable for the purpose to which they were devoted by reason of the enlargement.[1]  (Page 116.)

6. EMINENT DOMAIN—COMPENSATION—MEASURE AND AMOUNT—BURDEN.  In a proceeding to take private property for public use, the burden is on the owner of the property to prove the amount of his damages.  (Page 118.)

7. EMINENT DOMAIN—COMPENSATION—MEASURE AND AMOUNT—BENEFIT TO PARTY TAKING.  In a proceeding to obtain permission to enlarge the irrigation canal of another under Comp. Laws 1907, sec. 1288x22, the benefit to plaintiff from the use of defendants' canals cannot be considered in fixing the amount of damages sustained by defendants.  (Page 119.)

8. EMINENT DOMAIN—COMPENSATION—ELEMENTS OF DAMAGE.  In a proceeding to obtain permission to enlarge the irrigation canal of another under Comp. Laws 1907, sec. 1288x22, the fact that, by reason of the enlargement, defendants will be affected in their control of their canals and in making necessary repairs, does not entitle defendants to substantial damages, where defendants are given exclusive control of the water while in the canals, and plaintiff is given no right to enter the canals, but is compelled to pay his proportion of the cost of making repairs, since defendants are not unduly interfered with in the control of their canals.  (Page 122.)

9. EMINENT DOMAIN—IRRIGATION CANALS—ENLARGEMENT—DAMAGES.  In a proceeding to obtain permission to enlarge the irrigation canals of another under Comp. Laws 1907, sec. 1288x22, defendants claimed damages for deprivation of the right to enlarge their canals and appropriate additional water and supply others with such water for profit.  The decree provided that in enlarging the canals the plaintiff should maintain the existing irregularity of the banks.  *Held*, that defendants were not entitled to any such damages, since they had no better right than plaintiff to appropriate any unappropriated water, and, if they could appropriate any more water, there was nothing to prevent them from enlarging their canal; the pro-

---

[1] Nash v. Clark, 27 Utah, 158, 75 Pac. 371; Postal Tel. Cable Co. v. Oregon S. L. Ry. Co., 23 Utah, 474, 65 Pac. 735, 90 Am. St. Rep. 705.

vision respecting the maintenance of the irregularities of the banks reserving to defendants the benefit of the wider portions of the banks in case they desired to increase their capacity. (Page 123.)

10. JUDGMENT—TRIAL ON ISSUES—CONFORMITY TO FINDINGS AND CONCLUSIONS  Where the findings of fact are supported by the evidence, and the judgment is in accordance with the material findings, it is not erroneous because some of the conclusions of law are not logically correct. (Page 124.)

STRAUP, J. (dissenting).

APPEAL from District Court, Fourth District; *Hon. J. F. Chidester,* Judge.

Action by Caleb Tanner against the Provo Bench Canal and Irrigation Company and another.

Judgment for plaintiff. Defendants appeal.

AFFIRMED.

*J. W. N. Whitecotton* and *S. R. Thurman* for appellants.

*D. D. Houtz* for respondent.

FRICK, C. J.

The respondent instituted this proceeding to obtain permission to enlarge certain irrigating canals or ditches belonging to appellants. The proceeding is grounded on Comp. Laws 1907, section 1288x22, which reads as follows: "When any person, corporation, or association desires to convey water for irrigation or for any other beneficial purpose, and there is a canal or ditch already constructed that can be enlarged to convey the required quantity of water, then such person, corporation, or association, or the owner or owners of the land through which a new canal or ditch would have to be constructed to convey the quantity of water necessary, shall have the right to enlarge said canal or ditch already constructed, by compensating the owner of the canal or ditch

to be enlarged, for the damage, if any, caused by said enlargement; provided, that said enlargement shall be done at any time from the 1st day of October to the 1st day of March, or at any other time that may be agreed upon with the owner of said canal or ditch." The provisions contained in the foregoing section were first adopted in 1892 (Laws Utah 1892, p. 93), and have been in force in the territory and thereafter in the state of Utah ever since.

Respondent in his complaint, among other things, in substance, alleged that he had the right to the use of ten second feet of the waters of Provo River in Utah County; that appellants were the appropriators of, entitled to the use of, and did use a large quantity of, the water flowing in said river; that they were diverting said water from said river, and were conveying it through two certain canals or ditches of which appellants were the owners, and which canals constitute one continuous waterway or system several miles in length; "that there is about 1000 acres of arid land owned by divers persons near the north end of the said canal of the North Union Irrigation Company, as described, and it is so located with respect thereto that it is capable of being irrigated by waters drawn through the said canals; that said land is now barren and unproductive, and without artificial irrigation must remain so, and the only available source of water supply for the same is from Provo River, and the water now taken from the said river is insufficient to supply waters for the said land, and, in addition thereto, there is a large area of land in the same location, for the irrigation of which the water supply is wholly insufficient, and water for irrigation in the said locality has a ready rental value for irrigation and other purposes, and by increasing the said water supply in the said locality much arid land will be redeemed, and the use of such water be made of great value to its owner for rental and other purposes; that it is the plaintiff's intention to, and he will, if he is permitted, enlarge the said canals as hereinafter prayed for, supply water for rental, to be used in the redemption of the said arid lands, and increase the supply for lands where the water right is at

present insufficient, and divers persons are now ready upon assurance that such water can be supplied to enter into contract with the plaintiff for the use thereof;" that "there is no other available or feasible means of conveying said water to said lands than that of enlarging the said canals;" that appellants do not own any part of the lands traversed by said canals, but that they only own a right or easement in said lands for the purpose of maintaining said canals thereon to convey water through them; that prior to the commencement of this proceeding respondent obtained the permission of the owners of the fee of the land traversed by said canals to enlarge the same and that appellants refused to permit him to enlarge said canals, or to flow his water through them. Respondent therefore prayed that he be permitted to enlarge said canals as one entire waterway to the extent of increasing their capacity ten second feet, that the damages to be sustained by reason of said enlargement be ascertained, and that it be decreed that, upon payment of such damages to appellants, respondent have a perpetual right to flow ten second feet of water through said canals for the purposes aforesaid.

It is not deemed necessary to set forth the averments of appellants' answer, except to state that appellants denied that respondent was the owner of ten second feet of water, or any other quantity in excess of three second feet, and averred that the nature of the soil in which said canals are constructed is such as to cause great injury to said canals if respondent be permitted to reopen the bottom or sides thereof.

The case was tried to the court without a jury, and among other facts found by the court are the following: That respondent owns certain water rights in Provo River, the exact quantity of which is not found except that it exceeds a flow of two second feet; "that at certain seasons of the year there is a large flow of water in said river in excess of the waters appropriated by any person or persons whomsoever which is subject to an appropriation, and which plaintiff (respondent) intends to appropriate and divert from the said river at the point aforesaid, together with the water already

owned by him." The point of diversion referred to is that at which appellants divert the water into their canal. The court also found that respondent can use the water he desires to convey through appellants' canals for the purposes alleged in his complaint, which we have set forth, and that he "has no canal or waterway by means whereof he may convey his water to the said lands;" that the appellant the Provo Bench Canal & Irrigation Company has acquired a right of way or easement to construct, and has constructed, a canal sixteen feet wide and about two and one-half feet deep and 9200 feet in length, and that the other appellant has acquired a similar right and easement to construct, and has constructed, a canal which is practically a continuation of the Provo Bench canal aforesaid; that the latter canal is ten feet wide and about two feet deep, the length of which is not given, but the point at which respondent desires to take his ten second feet of water from said canals, and the distance that he desires to enlarge them, are specifically set forth. The court also found that the canals, as now constructed, are irregular in size, and that their maximum capacity at their smallest point is 125 second feet, and that appellants require the full capacity of said canals to carry the water used by them. It is further found that it is feasible to enlarge said canals, and that the same "in their entire course are excavations and cuts and fills of earth, and are such as admit of enlargement and increased conveying capacity without detriment or injury thereto." The court found the damages sustained by each appellant to be the sum of one dollar.

The court, in the decree based upon its findings, among other things, required that the canals be enlarged under the supervision of a competent civil engineer who may be selected by appellants and whose services shall be paid for by respondent; that, wherever the "water surface" of said canals is broken and the character of the soil is such as may cause loss of water by seepage or percolation, such places, if any, must be sealed by puddling or other means so as to avoid loss as aforesaid; that respondent must bear the loss of water while in transit through said canals. It is also provided that the

water which is turned into said canals by respondent shall be controlled by appellants at the expense of respondent, who "shall pay all costs of all devices and means made necessary for diverting said added amount of water into said canals, and all devices, gates, and means of dividing said water and measuring the same out of the said canals, and shall pay *pro rata* the costs and expenses of maintaining said canals in the proportion that ten second feet of water bears to the carrying capacity of said several canals."

The decree also provides as follows: "It is further ordered, adjudged, and decreed that the plaintiff, before entering upon work of enlargement, execute and file in this cause in the above-named court a good and sufficient bond in the penal sum of $15,000, to be approved by the clerk of said court, in favor of the defendants jointly and severally, conditioned for the execution of said work of enlargement in such manner as to add ten second feet carrying capacity to each of the said canals without injury to the said canals, and to maintain the same with their present margin of safety and in as an impervious state to water as they are at the present time, and conditioned for the payment of all damages that may arise to the defendants or either of them through failure to execute said enlargement in manner aforesaid, and conditioned for the payment to the defendants and each of them of all damages which may be done to them or any person for which they may be responsible, arising out of the enlargement of said canal by plaintiff, and further conditioned that the plaintiff will pay all costs and expenses of controlling, regulating and dividing his water as aforesaid by the defendants and his *pro rata* costs and expenses of maintaining the said canals as hereinbefore decreed and determined. The said bond shall be perpetual and a condition precedent to the right of the plaintiff to enlarge said canals, and precedent to the right of the plaintiff and his successors in title to flow water therein. It is further ordered, adjudged, and decreed that the damages to the defendants and each of them, except such as may arise through defective or insufficient enlargement of the said canals, are

nominal, and are adjudged in favor of each of the defendants in the sum of one dollar, and further damages are provided for with the bond aforesaid. . . . The bond hereinbefore required by this decree may be changed in the amount thereof upon motion with notice to the adverse party, upon sufficient showing of necessity for such change, and the court retains jurisdiction to make further order respecting said bond."

While counsel for appellant have assigned quite a number of errors by which they assail the findings of fact and some of the conclusions of law, yet in their brief they have practically confined their arguments to three only of the assignments.

The first assignment relates to the findings; and it is contended that the court erred in finding that the respondent "is the owner of certain water and water rights in and to the waters of Provo River, together with the right to divert the same from said river at the point where the canal of the Provo Bench Canal Company intersects said river," because there is no evidence to sustain such finding. The argument of counsel in this respect is that the water right owned by respondent is a right to use water which is diverted at a point farther up the stream than the point of diversion of appellants' canals, and hence it is claimed that respondent owns no water right at the point of diversion of said canal. From the evidence it appears, however, that respondent can divert his water at the point where appellants' canals divert the waters from Provo River, and hence the finding is supported by the evidence.

But it is contended that respondent has not shown that he has an actual and subsisting right to the use of ten second feet of water, and hence the court erred in giving the respondent the right to enlarge appellants' canals for the purpose of conveying water through them which he does not own. As already pointed out, respondent has some water which he can divert into appellants' canals, and it is undisputed that in certain seasons of each year there flows a large quantity of unappropriated water in Pro-

40 Utah—8

vo River, a portion of which respondent intends to and has made application to appropriate, and, if permitted, will divert it through appellants' canals. From the evidence and findings, it is clear that respondent can neither divert nor devote to a beneficial use any part of the water owned by him nor any of the unappropriated waters aforesaid, unless he can divert said water into and convey the same through appellants' canals to the lands which he seeks to irrigate and reclaim with the water aforesaid. Under such circumstances, it is apparent that if the courts are powerless to authorize an enlargement of a ditch or canal pursuant to the provisions of section 1288x22, *supra*, until an actual appropriation of water is made and completed, then surplus water flowing in a stream may be prevented from being made available at all because it cannot be applied to a beneficial use, unless it can be diverted into and conveyed through some particular ditch or canal owned by some person other than the appropriator of the water to the place where it is intended to be applied to a beneficial use in case the owner of the canal objects. In this case there is evidence, however, that an application to appropriate a portion of the surplus water of Provo River has actually been made with a view of diverting the same into the canals of appellants for use upon the lands mentioned in respondent's complaint and in the findings, and that the application has been allowed.

Appellants, however, contend that said application should be ignored by us because it was made for the benefit of, and allowed by, respondent, who in his official capacity as state engineer is alone authorized to pass upon and allow such applications. The statute of this state, so far as we are aware, does not exclude any person from making an application for any of the unappropriated waters of this state. Moreover, the statute gives the right to any person interested to protest any application for water, and, if his protest is disallowed, he may have the right to appropriate the water applied for determined by the courts. The statute, therefore, provides a direct method by which

the application to appropriate water may be tested and the rights of the applicant, as well as the alleged rights of all interested persons, may be heard and determined. We are also of the opinion that in adopting the statute aforesaid it was not intended that courts should have or exercise the power to pass upon and determine the water rights of a person who seeks to avail himself of the provisions of section 1288x22, *supra,* in a proceeding based upon that section. We think all that the applicant is required to show in a proceeding instituted pursuant to said section is that he has water, or has applied for water, and that his application is made in good faith, and that he desires to avail himself of the provisions of said section. To such effect are all the authorities that we have been able to find. In *Schneider v. Schneider,* 36 Colo. 518, 86 Pac. 347, it was contended that "no easement can be acquired for a ditch" by condemnation proceedings until the right to the use of the water to be conveyed by the proposed ditch shall have become vested. The Supreme Court of Colorado, however, held that such is not the law, and further held that the question of water rights cannot be considered in such a proceeding. It was there also held that it is not essential to the exercise of the right contemplated by section 1288x22 that the applicant shall have a vested right to the use of the water which he seeks to convey through the proposed ditch. To the same effect are the following cases: *Gibson v. Cann,* 28 Colo. 499, 66 Pac. 879; *Prescott Irr. Co. v. Flathers,* 20 Wash. 454, 55 Pac. 635; *State v. Centralia, etc., Co.,* 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198. See, also *Trippe v. Overacker,* 7 Colo. 72, 1 Pac. 695, where the Supreme Court of Colorado held that a statute similar to section 1288x22, wherein the question of damages is left to the determination of a court or jury, is valid.

Upon principle the conclusions reached in the foregoing cases seem to us to be clearly sound. The applicant who seeks to enlarge a ditch, before he may proceed to do so, must pay the owner thereof all the damages he may sustain by reason of the enlargement. In the case at bar respondent

must not only do this, but, in addition, he is required to give an indemnity bond which, according to the evidence, is almost equal in amount to what the present cost of constructing appellants' canals would be, although the original cost, including maintenance, was much more. If respondent, therefore, must, in advance, pay all the damages that appellants may suffer and in addition must provide an indemnifying bond securing them against every possible future injury or damage, they certainly have no interest in whether he has completed his application to appropriate water or not. Moreover, it is not reasonable to assume that respondent will incur all of the foregoing costs and expenses in enlarging the canals before he has water to flow through them.

Appellants also insist that the court erred in finding that "both of the said canals are such as to admit of enlargement and increased carrying capacity without detriment or injury thereto." Although this finding is vigorously assailed, yet we think it is sustained by the clear, if not the overwhelming, weight of the evidence. It is beyond dispute that appellants have constructed, and for many years have successfully maintained, the canals sought to be enlarged, and that they have been able to make them impervious. The court in the decree, in order to keep them so, requires respondent to follow the methods which by years of actual experience have been found practical and sufficient to maintain the canals in that condition. The matter is therefore not left to speculation or conjecture, but the decree is based upon actual experience. It is reasonably safe to infer, therefore, that what has proved sufficient to maintain the canals in proper condition in the past will likewise keep them so in the future, and in accomplishing this respondent is compelled to assume all the risks.

Counsel for appellants most vigorously insist that the court committed flagrant error in fixing the amount of damages, and they in the strongest possible terms claim that sacred rights of their clients have been disregarded, and that their property has been taken without just or any compensation. This presents the principal question.

in the case, and, at first blush, there seems to be much merit
in counsel's contention. Upon a closer and a more compre-
hensive view of all the facts and circumstances, however, the
first impression soon yields to the actual conditions as they
are presented by the record. It is not questioned, nor could
it well be under the ruling of this court made in *Nash v.
Clark,* 27 Utah, 158, 75 Pac. 371, 1 L. R. A. (N. S.) 208,
101 Am. St. Rep. 953, that the use sought by the respondent
is a public use, and hence he may acquire the right to the
use of appellants' canals through the exercise of the power
of eminent domain. In doing so, however, the appellants
must be fully compensated for all of their property that is
taken or damaged. If this be done, however, they cannot
legally complain. We remark that neither in the complaint
nor in the answer is anything said respecting the value of
the property affected, nor of the amount of damages that
the appellants or either of them will or may sustain if re-
spondent is permitted to enlarge their canals. We do not
make the foregoing statement because we think that allega-
tions or averments of value in a proceeding like this were
necessary in any of the pleadings, but we allude to it merely
because it is a fact. At the trial there was no direct evidence
with respect to the amount that either of the appellants would
be damaged by the proposed enlargement of the canals. There
was evidence, however, of the cost of construction and main-
tenance of the canals, the character of the soil through which
they are constructed, the possibility of loss of water by seep-
age or percolation through the sides and bottom of the canals
in case either is broken, and other elements that are re-
ferred to in the findings and bond to which we have referred.
In this connection it is urged by appellants that at all events
it is clear from the evidence that the amount of damages
was far in excess of that allowed by the court, although
no direct evidence of damage was offered.

It is also contended that the burden of establishing the
amount of damages was upon respondent, and that in any
event the court erred in permitting him to enter upon appel-
lants' property before he had established what was just com-

pensation for appellants' property taken or affected by
his proposed improvement. We think, however, that,        **6**
under the practice in force in this jurisdiction, the
burden of establishing the *quantum* of damages was upon
the appellants. Such has always been, and continues to be,
the practice in the district courts of this state. Moreover,
such is the great weight of authority under statutes similar to
ours. In 15 Cyc. 898, the prevailing rule upon this question
is stated as follows:

"The burden of showing necessity and public use is upon peti-
tioner. The burden of showing the damages which the owner will
suffer rests on him."

In 2 Lewis, Eminent Domain (3d Ed.), sec. 645, the rule
is stated to be in accordance with the text quoted from Cyc.,
and the author of Lewis' Eminent Domain, in part at least,
collates the cases both for and against the rule as there
stated. In addition to the numerous cases cited by Mr.
Lewis, see, also, *Monterey County v. Cushing,* 83 Cal. 507,
23 Pac. 700, *Los Angeles County v. Reyes,* (Cal.), 32 Pac.
233, and cases there cited.

The question, therefore, is, Did the court err in fixing
the amount of damages? It must be remembered that it is
conceded that the appellants did not own the fee of the lands
traversed by the canals in question, but all they owned was
an easement or right of way and right to maintain the canals
upon the lands in question. All that respondent sought to,
and all that he could, condemn, as against appellants, was
a similar right or easement. Respondent's easement was,
however, to be imposed upon, or added to, appellants' exist-
ing easement. No doubt appellants' easement in legal con-
templation constituted property, and an interference with or
an impairment of it was, in legal effect, an interference with
property or with a property right belonging to them, and
for such interference or impairment they are entitled to
what our Constitution terms "just compensation." If ap-
pellants' easement, therefore, is regarded as property, it nev-
ertheless is property which was and could be used only for

a particular purpose, namely, for the purpose of conveying water for certain purposes from one point to another in Utah County. Under such circumstances, the measure of damages was the "extent to which it (the easement) was rendered less valuable for the uses to which it was devoted." 2 Lewis, Eminent Domain (3d Ed.), sec. 723, and cases there cited. The question, therefore, is, To what extent is the value, or the value of the use, of appellants' canals reduced by enlarging them to the extent and for the purpose permitted by the trial court? We have already pointed out that there is no direct evidence upon this point whatever.

Counsel, however, urge that to permit respondent to use their canals as contemplated will be of great advantage, and may result in considerable profit to him. This may be so, and yet the question remains, In what way does what he is permitted to do damage appellants? They are limited in their recovery by the amount of damages suffered by them. They cannot recover for any benefit respondent may receive. If the benefits and advantages that may be obtained through the exercise of the right given by section 1288x22, *supra*, must be paid to the owner of the canal before the right can be exercised, then the purposes sought to be attained by said section are thwarted, and the supposed advantages or benefits to be derived therefrom are neutralized, and the statute may as well be repealed. While counsel apparently have been unable to find—nor have we found—any cases precisely in point, yet analogous cases in which the principle respecting the measure of damages applicable to the case at bar is illustrated and applied are not rare. In the case of *Chicago, B. & Q. Rd. Co. v. Chicago*, 166 U. S. 226, 241, 242, 17 Sup. Ct. 581, 586, (41 L. Ed. 979) counsel for the railroad company advanced precisely the same arguments that are presented by counsel for appellants in this case. In that case a public easement was imposed upon or added to a private easement, just as in the case at bar. A public street crossing was laid over the company's right of way, and in doing so it was required to open up a crossing and maintain it and to assume the risks incident

to a public railroad crossing in a city. The amount of dam-
ages allowed in that case was one dollar as in this case, and
the company contended that its property was being taken
without just or any compensation, and hence was taken
without due process of law. Mr. Justice Harlan, in an ex-
haustive opinion, considered the company's contentions from
almost every point of view, and the court arrived at the con-
clusion that the damages of one dollar awarded the com-
pany, in view of all the circumstances, constituted just com-
pensation. In the course of the opinion it is said:

"The contention of the railroad company is that the verdict and
judgment for one dollar as the amount to be paid to it was, in
effect, an appropriation of its property rights without any compen-
sation whatever; that the judgment should be read as if in form
as well as in fact it made no provision whatever for compensation
for the property so appropriated. . . . The owner of private
property taken under the right of eminent domain obtains just
compensation if he is awarded such sum as, under all the cir-
cumstances, is a fair and full equivalent for the thing taken from
him by the public. If the opening of the street across the railway
tracks did not unduly interfere with the company's use of the
right of way for legitimate railroad purposes, then its compensa-
tion would be nominal."

So here, if appellants' use of their canals is "not unduly
interfered with" by the enlargement and use that respondent
is permitted to make of them under the conditions that are
imposed upon him, then, in view that he neither takes any
property nor interferes with any substantial property rights
of appellants, their damages must be merely nominal. In
what way does respondent interfere with appellants' use
of the canals? Is it reasonable to assume that ten second
feet of water added to a flow of 125 second feet, or an in-
crease of about eight per cent., will "unduly interfere" with
appellants' use of the. canals? While it is true that the
quantity of water which respondent is permitted to add to
the present flow in the canals might, under certain circum-
stances, cause injury, yet in this case the evidence clearly
shows that such a result is not at all likely or probable.
Moreover, the decree guards and protects appellants against
any future damage or liability that may be occasioned by

the enlargement of the canals and the additional flow of water therein. No one can seriously contend that, in view of the evidence in this case, it is possible at this time to say that any material damages will be suffered by appellants in case of the enlargement of the canals. If this be true, then it must follow that the future damages, if any, that appellants may suffer, are such as are denominated "remote, imaginary, uncertain, and speculative." Such damages, it has been frequently held, should be disregarded. 2 Lewis, Eminent Domain (3d Ed.), section 739, and cases cited. The trial court, however, in permitting respondent to enlarge the canals and to convey his water through them, has required him to protect appellants against any contingencies or risks, and has required him to give and keep in force perpetually a bond to which appellants may constantly have recourse for indemnity in case any injury or damage shall result from the enlargement and use of the canals by respondent. From what appears in the case passed on by the Supreme Court of the United States to which we have referred, it is reasonable to assume that the railroad company would have been well satisfied if the court had protected it as appellants are protected. See, also, *Chicago, B. & Q. Rd. Co. v. Chicago,* 149 Ill. 457, 464, 37 N. E. 78, 79. In those two cases about all of the contentions made by counsel for appellants are disposed of adversely to them. The same principle is discussed and in effect applied by this court in *Postal Tel., etc., Co. v. O. S. L. R. Co.,* 23 Utah, 474, 65 Pac. 735, 90 Am. St. Rep. 705. In 4 Suth. Dam. (3d Ed), section 1063, at page 3104, the author, in discussing what constitutes just compensation for taking property under the right of emi‑ nent domain, says:

"According to the best authorities, however, it is believed to be remuneration for the *net injury which is suffered from the exercise of this sovereign right.* The word 'compensation' imports that a wrong or injury has been inflicted, and must be redressed in money. Money must be paid to the extent of the injury. This may be less or more than the value of the property taken; but, when compensation has been made *to the extent of the injury,* the language and just purpose of the Constitution are satified." (Italics ours.)

Where, as in this case, no property is actually taken, and all that is sought is merely to impose an easement or additional servitude upon an existing one, and the owner of the prior easement is not deprived of its use, or is not unduly interfered with, it is easy to perceive how the damages suffered by the owner may be merely nominal. This principle is well illustrated in the cases of *In re Village of Olean v. Steyner,* 135 N. Y. 341, 32 N. E. 9, 17 L. R. A. 640, *Matter of Adams,* 141 N. Y. 297, 36 N. E. 318, and *Arnold v. Hudson R. Ry. Co.,* 55 N. Y. 661. In the first case last above referred to Mr. Justice Finch, in speaking for the New York Court of Appeals, says:

"The commissioners, therefore, could only award to the owners (of the prior easement) the value of the public easement taken, deducting therefrom the value of the private easement, which already encumbered the property. *Matter of City of Brooklyn,* 73 N. Y. 184. It is quite evident that the public right taken, deducting therefrom the value of the private easement, leaves only a nominal injury because the added burden is itself but technical and nominal. The real burden is in no manner increased by absorbing the private in the public right, or substituting the latter in the room and stead of the former, since as burdens on the land they are substantially identical."

See, also, Joyce on Damages, section 76. If therefore, we attempt to express appellants' damages in the terms employed by the New York Court of Appeals, it is still apparent that the value of their easement—that is, the value of the canals and the right to maintain and devote them to the purposes for which they are intended—is just as great after the enlargement as it was before. Nor is it apparent, nor probable, that the convenient use of the canals will be impaired to any appreciable extent.

But it is contended that appellants are affected in the control of the canals and in making repairs if any are necessary. Such a claim is always possible where one easement is added to another, and where a use becomes a doubled, instead of a single, one. This, however, is not a matter for which substantial damages can be allowed, unless the acts of interference unduly interfere with a

present use or invade a substantial right which is recognized as possessing substantial value. In this case all respondent is permitted to do is to conduct his water into the canals, and, after it flows into them, it is placed under the exclusive control of appellants, and all they do is to turn it back to respondent at the point he desires the water for use. For any services of appellants in so conducting his water respondent must pay them the reasonable value. In making repairs respondent is given no special right to enter the canals, but is compelled to pay his proportion of the cost of making repairs. Appellants, therefore, are neither unduly interfered with nor hampered in their control of the canals, and hence cannot be injured or damaged in that regard.

It is further contended by appellants' counsel in their brief that by the decree appellants "are to be deprived of their right to enlarge (the canals), their right to appropriate additional water, their right to supply others for a profit to the extent at least that plaintiff occupies their canals, thus transferring these identical rights which the plaintiffs says will be valuable to him from the defendants who have them to the plaintiff who has them not." By what is said counsel assume that appellants had an exclusive vested right to appropriate the water which respondent claims, and which he intends to convey through the canals. In our judgment this assumption is not tenable. While appellants no doubt had the right to make application to appropriate additional unappropriated waters flowing in Provo River if they so desired, yet they had no better right to do so than any one else had, including respondent. Such a right was one they enjoyed in common with all persons, and the first applicant who has complied with the law relating to making application for the appropriation of unappropriated water obtains a prior right to appropriate the same. Appellants had made no application, and hence had no right of which respondent could have deprived them. The right to make an application to appropriate water is neither a transferable right nor subject of sale, and hence one citizen cannot legally complain because another has made a prior

application, and has in that way initiated a prior right as against all other citizens. If respondent has no prior right to appropriate the surplus waters of Provo River, then appellants may make application therefor, and establish a right thereto in themselves. If they can establish such a right, there is nothing in the decree which prevents them from enlarging their canals at any time. Moreover, the decree specially provides that in enlarging the canals the irregularity of their banks must be maintained. This condition was imposed upon respondent so that appellants, and not he, should enjoy the benefits of the wider portions of the canals in case they desired to increase the capacity of their canals. Here, again, appellants are fully protected. In either view, therefore, no legal right of appellants in or to any water or to the use thereof, or to make application therefor, or to the enjoyment of any advantage they may have, has been invaded, taken, or impaired by respondent, and for these reasons appellants' contentions are not tenable.

The contention that some of the conclusions of law are erroneous, even if conceded to be true, is not of controlling importance in view of the findings. In our opinion the findings are supported by the evidence and the judgment is in accordance with the material findings of fact. In view of this the mere fact that some of the conclusions of law may not be logically correct cannot affect the judgment. In *Davis v. Baugh,* 59 Cal. 576, the Supreme Court of California, in referring to this subject, says:

"Where some of the 'conclusions of law' in a decision are not properly drawn from the facts found, this is no ground for reversing the judgment if the ultimate conclusion upon which the judgment rests is not erroneous in view of the facts found. In such a case the minor conclusions are at most but errors—erroneous deductions which do not injure the party complaining of them."

See, also, *Miller v. Hicken,* 92 Cal. 229, 28 Pac. 339; *Spencer v. Duncan,* 107 Cal. 423, 40 Pac. 549.

In concluding this opinion, we desire to make it clear that by what we have said we do not mean that in making appli-

cations for the enlargement of ditches or canals pursuant to section 1288x22 substantial damages may not be recovered, although the owner of the canal or ditch is not deprived of the use thereof. What we mean is that in this case nothing is made to appear upon which a finding or judgment for substantial damages can rest. Each case, under said section, must be determined in accordance with its own facts and circumstances. No hard and fast rule can be laid down relative to the question of damages that should be allowed in all cases. It can be said, however, that, where the case clearly falls within the principles laid down by the Supreme Court of the United States and the state courts to which we have referred, then only nominal damages are recoverable because the injury is merely such. Nor do we wish to be understood as holding that an applicant under section 1288x22 may, by, giving a bond, postpone the payment of any damage which is a proper element to be considered in fixing damages. Such has not been done in this case. What we mean to say with regard to the bond is that the court has protected appellants against all future contingencies which might result in damages. Whether the court had the power to do this without the consent of the applicant we do not consider in view that he is satisfied.

We are clearly of the opinion that appellants' use of their canals will be the same after the enlargement thereof as before, and that they have not shown wherein they will suffer inconvenience, injury, or damage to any extent, and hence the judgment ought to be, and it accordingly is, affirmed, with costs to respondent.

McCARTY, J., concurs.

STRAUP, J.

I dissent. My principal reasons therefor are stated in my dissenting opinion in the case of *Salt Lake City v. East Jordan Irrigation Company, infra,* also just decided.