# SALT LAKE CITY v. EAST JORDAN IRRIGATION COMPANY.

No. 2202.  Decided December 26, 1911 (121 Pac. 592).

1. EMINENT DOMAIN—PUBLIC USE—WHAT CONSTITUTES.  A city instituted a proceeding under Comp. Laws 1907, sec. 1288x22, to obtain a right to enlarge an irrigating canal owned by an irrigation company for the purpose of conveying water from a river for the use of its inhabitants.  The city already had a canal of its own from the river in question, but, by reason of the canal of the irrigation company being on a higher elevation, it would be more advantageous to the city to convey its water through such canal.  *Held*, that the use which the city sought to make of the canal when enlarged was a public use.[1]  (Page 135.)

2. EMINENT DOMAIN—ACTS CONSTITUTING EXERCISE OF POWER.  A proceeding under Comp. Laws 1907, sec. 1288x22, to obtain the right to enlarge an irrigation canal of another, is controlled by the principles involved in the exercise of the right of eminent domain.  (Page 135.)

3. EMINENT DOMAIN—COMPENSATION—CONSTITUTIONAL PROVISIONS.  The provisions of Comp. Laws 1907, sec. 1288x22, that where any person or corporation desires to convey water for any beneficial purpose, and there is an existing canal that can be enlarged to convey the required quantity of water, such person or corporation may enlarge such canal by compensating the owner of the canal for any damage caused by the enlargement, complies with Const., art. 1, sec. 22, requiring just compensation to be made when private property is taken or damaged for public use.  (Page 135.)

4. EMINENT DOMAIN—COMPENSATION—MEASURE AND AMOUNT—ELEMENTS.  In a proceeding by a city under Comp. Laws 1907, sec. 1288x22, to obtain the right to enlarge an irrigation canal owned by an irrigation company to carry water of the city, the measure of damages is the decrease in value of the canal for canal purposes caused by the enlargement, and by the joint use by the city and the company, and the benefit derived by the city from such use does not constitute an element of damages sustained by the company.[2]  (Page 136.)

5. EMINENT DOMAIN—COMPENSATION—WHEN PROPERTY "TAKEN" OR "DAMAGED."  Where an owner continues in the use and en-

[1] Nash v. Clark, 27 Utah 158, 75 Pac. 371.

[2] Tanner v. Provo, 40 Utah, 105, 121 Pac. 584.

joyment of his property and property rights after the completion of a public improvement to the same extent and for the same purpose as before, his property has not been "taken" within Const., art. 1, sec. 22, providing that private property shall not be taken or damaged for public use without compensation, and it cannot be "damaged" within that provision except by the invasion of a theoretical legal right. (Page 137.)

6. EMINENT DOMAIN—IRRIGATION CANALS—ENLARGEMENT—DAMAGES. In a proceeding by a city under Comp. Laws 1907, sec. 1288x22, to obtain the right to enlarge an irrigation canal owned by an irrigation company to carry water of the city, the company is entitled to any damages sustained by the corporate entity by the temporary interference with the distribution of water by defendant caused by the work of enlargement, but is not entitled to recover for damages sustained by the individual users of water through such temporary interference, although they may be stockholders of the corporation. (Page 140.)

7. EMINENT DOMAIN—COMPENSATION—NOMINAL DAMAGES—WHEN PROPER. In a proceeding under Comp. Laws 1907, sec. 1288x22, to obtain the right to enlarge an irrigation canal of another to carry water of the plaintiff, if the canal owner is to continue in possession and use of the canal after the proposed improvements the same as before, and no part of his property is actually taken, and there are no additional costs or expenses incurred in either the use or maintenance of the canal by reason of the improvement, he can recover only nominal damages. (Page 142.)

8. EMINENT DOMAIN—COMPENSATION—TAKING WATER RIGHTS—ELEMENTS. In a proceeding under Comp. Laws 1907, sec. 1288x22, to obtain the right to enlarge an irrigation canal of another to carry water of plaintiff, the canal owner is entitled to recover damages for any land actually taken for any diverting appliances interfered with or affected, so as to require them to be changed, by reason of the enlargement, for temporary interference with the distribution of water, for the use by the applicant of portions of the canal which are wider than are required by the owner, if such wider portions have any substantial value, and for the decrease in the value of the canal by reason of the enlargement and use by applicant. (Page 145.)

STRAUP, J. (dissenting).

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Salt Lake City against the East Jordan Irrigation Company.

From the judgment the parties bring cross-appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*F. S. Richards* and *Ogden Hiles* for appellant.

*Rawlins, Ray & Rawlins* for respondent.

APPELLANT'S POINTS.

If damage shall result to the individual property or right of a stockholder of the respondent company, by reason of the city's carrying out the work of enlarging the canal, he will have his remedy and judgment for damages against the city independently of the judgment in this proceeding. (*Hearst & Haggin v. Putnam Mfg. Co. et al.*, 28 Utah, 184, 77 Pac. 763.) The measure of compensation is, the amount of decrease, if any, in the value of the use of the East Jordan canal for canal purposes, which shall be caused by the enlargement thereof by the city for its purposes. The use by the city for its purposes, being exercised jointly with the use of the respondent company for its said canal purposes. (*Chicago & Northwestern Ry. Co. v. Chicago*, 140 Ill. 309-314; *Chicago & Burlington R. R. v. Chicago*, 149 Ill. 457-459; *Same v. Same*, 166 U. S. 227-241-248; *Postal Telegraph Co. v. Oregon Short Line Railroad Co.*, 23 Utah, 474-487, 65 Pac. 735; *Stockton & Linden Gravel Co. v. Stockton, etc., R. R. Co.*, 53 Cal. 11-12; Lewis Eminent Domain [2d Ed.], section 492; [3rd Ed.], section 734.) Where two public uses can stand together without material impairment or impediment of one by the other, they must both so stand. (*Postal Tel. Co. v. Oregon Short Line, supra; Salt Lake City v. Salt Lake City Water, etc., Power Co.*, 24 Utah, 249-265, 67 Pac. 672.) The common universal practice has been, for the legislature to authorize proceedings under the laws of eminent domain

by which different easements and rights of way of all descriptions have been imposed on each other and made to stand together without material impairment or impediment of one by the other. Id. Just compensation, as used in the Constitution means a fair and full equivalent for the loss sustained by the taking for public use. (*Postal Telegraph v. Oregon Short Line, supra; Chicago & N. W. R. R. Co. v. Cicero,* 157 Ill. 48-56; *Chicago & Pac. R. R. Co. v. Francis,* 70 Ill. 239-240; *West Side Elevated Ry. Co. v. Stickney,* 150 Ill. 362-382-383; Lewis on Eminent Domain, [2d Ed.], section 462; and cases cited.)

### RESPONDENT'S POINTS.

The assignment inquisition cannot be aided by any of the other assignments, nor by matters alleged or argued elsewhere; it must be complete within itself. (*Beck v. Baden,* 42 Pac. [Kan.] 845; *O. S. L. Ry. v. Russell,* 27 Utah, 457, 76 Pac. 345.)

Where testimony admitted under a ruling which is understood not to be final, the error, if any, is waived by the failure to renew the motion to strike. (*Crosett v. Whelan,* 44 Cal. 203; *Bitzer v. Bobo,* 38 N. W. 609; *St. Louis & S. F. Ry. Co. v. Brown,* 35 S. W. 225; *United Order of True Reformers v. Murray,* 41 Atl. 896.)

A statute which attempts to authorize the taking of private property for public use without providing for the assessment of just compensation is unconstitutional and void. (Cooley's Const. Lim. [7th Ed.], 817; Lewis on Em. Domain [3rd Ed.], section 386; *Monongahela Nav. Co. v. U. S.,* 148 U. S. 312; *Pennsylvania Ry. Co. v. B. & O. Ry. Co.,* 60 Md. 263; *Welton v. Dickson,* 57 N. W. 559; *Trippe v. Overacker,* 1 Pac. 695; *Sand Creek Lateral Irrigation Co. v. Davis,* 29 Pac. 745; *Foster v. Scott,* 136 N. Y. 577; *Eaton v. Boston, Concord & Montreal R. R. Co.,* 51 N. H. 504; 12 American Decisions, 147; *Canadian Pac. Ry. Co. v. Moosehead Telephone Co.,* 29 L. R. A. [N. S.] 703, 76 Atl. 885.)

Any invasion of property, except in case of necessity, either upon, above or below the surface, and whether temporary or permanent, is a taking; as by constructing a ditch through it, passing under it by a tunnel, laying gas, water or sewer pipes in the soil, or extending structures over it, as a bridge or telephone wire. (Lewis, Eminent Domain, [3rd Ed.], section 232.)

The using or enjoying of an irrigation ditch without the consent of the owner is a taking. (Mills, Eminent Domain, section 30; *Lovett v. West Virginia Central Gas Co.*, 65 S. W. 196.)

FRICK, C. J.

This proceeding was instituted by appellant, a municipal corporation, against respondent, a corporation organized for the purpose of distributing water for irrigation and other beneficial purposes, to condemn, or, rather, to obtain the right to enlarge an irrigating canal, owned by respondent. The proceeding is based on Comp. Laws Utah 1907, section 1288x22, which reads as follows:

"When any person, corporation, or association desires to convey water for irrigation or for any other beneficial purpose, and there is a canal or ditch already constructed that can be enlarged to convey the required quantity of water, then such person, corporation, or association, or the owner or owners of the land through which a new canal or ditch would have to be constructed to convey the quantity of water necessary, shall have the right to enlarge said canal or ditch already constructed, by compensating the owner of the canal or ditch to be enlarged, for the damage, if any, caused by said enlargement; *provided,* that said enlargement shall be done at any time from the 1st day of October to the 1st day of March, or at any other time that may be agreed upon with the owner of said canal or ditch."

A great mass of evidence was adduced at the trial and is preserved in a bill of exceptions, much of which, however, we deem entirely immaterial.

The controlling facts, briefly stated, are in substance as follows:

The respondent owns and uses, and for more than thirty years has owned and used, an irrigating canal, the head or intake of which is in Jordan River near its source, which is in the north end of Utah Lake. The canal thence extends in a northerly direction a distance of about nineteen miles through Salt Lake valley to what is known as Little Cottonwood Creek. The capacity of the canal is 170 cubic feet of water per second, and has been and is used to convey that amount of water from the Jordan River to landowners for irrigation and domestic purposes. The landowners aforesaid are stockholders of respondent, which is a corporation of this state having a capital stock of $200,000 divided into 8000 shares of the par value of twenty-five dollars each. The appellant owns 1600 shares, one-fifth of the capital stock aforesaid, and the other four-fifths is owned by about 375 stockholders who are the landowners aforesaid and the water users under the canal. Appellant is also the owner of a canal, which, for convenience, will hereafter be called city canal, which was constructed at about the time when respondent's canal was constructed. The head or intake of the city canal is likewise in the Jordan River, but at a point considerably farther down said stream, so that the intake of the city canal is fifty feet lower in elevation than the intake of respondent's canal. The city canal is about twenty-nine miles in length, and was constructed to convey water from its intake in Jordan River to the inhabitants of Salt Lake City for irrigation, sprinkling streets, and other purposes, not including culinary use, since the water is not potable. If the water as conveyed through the city canal can be conveyed to Salt Lake City through respondent's canal when enlarged and extended as contemplated, then the water conveyed therein could be delivered to the city inhabitants at an elevation of eighty feet higher than this can be done from the city canal, the elevation of which is too low to make it possible to deliver water through it to a large number of the 93,000 inhabitants of Salt Lake City. The principal object of appellant in seeking to obtain the right to enlarge respondent's canal from its present capacity of 170

to 320 cubic feet per second and to construct an extension thereto is to enable it to make an exchange of the unpotable for potable water, and to meet the needs and requirements of a large number of the inhabitants aforesaid for a better water supply.   It also appears that respondent's canal is constructed "along the highest possible contour grade at which it was possible to divert water by gravity from Jordan River;" that the canal is constructed over some ravines and gulches and through some ridges and uneven surfaces, so that in constructing it fills and cuts were necessary, and its original cost of construction amounted to about $300,000, and through which water is supplied to irrigate and cultivate about 16,000 acres of land, all of which by the use of water conveyed as aforesaid has been redeemed from a barren state; that to supply the needs of the water users along the canal many headgates or diverting appliances are necessary to divert the water from the main canal into lateral ditches for distribution; that many of these diverting appliances are used all the year, while others are used only during the irrigating season, or about one-half of the year. The canal is constructed through practically worthless land, the title to which, except a small portion, is not in respondent.   It was also shown that, while the carrying capacity of respondent's canal is only 170 cubic feet of water per second at its narrowest points, yet that at numerous places throughout its length its capacity is much in excess thereof by reason of the irregularity of its banks.   The evidence also shows that respondent for a distance of about one and one-half miles owns the land upon which its canal is located, and that the land is of very little, if of any, value, that the remaining portions of the canal were constructed on public domain over which respondent obtained the right to construct and has the right to maintain it, and that the title to no part of said land is in respondent.

Before entering upon the trial, the court found that the use appellant proposed to make of respondent's canal was a public use; that the proposed enlargement of the canal was necessary, and upon such findings, and in connection with

the judgment for damages, the court entered a decree in conformity with the statutes of this state awarding appellant the right to enter upon and enlarge the canal. The case in so far as damages were concerned was tried to a jury. The jury under the instructions of the court found that by the enlargement of the canal, for the reasons which will hereafter more fully appear, respondent would suffer or sustain damages in the sum of $75,000. The court entered judgment upon the verdict, and the appellant has appealed from the judgment for damages, while respondent has also taken a cross-appeal from that portion of the judgment or decree declaring the public use and necessity of the enlargement of the canal, and also challenges appellant's right to make said enlargement under the statute we have quoted, the validity of which is assailed. Respondent on its cross-appeal also insists that the court's rulings and instructions with respect to the measure of damages are erroneous.

The theory upon which the question of damages was tried and submitted by the court is perhaps best reflected from six special findings which were submitted for answer and were answered by the jury. We shall not state those questions and answers in the order in which they were submitted and answered, but in the interest of clearness we shall place those which are in favor of appellant in one group and those in favor of respondent in another group.

Those in the first group are as follows:

"(1) Will the enlargement of the East Jordan canal, in the manner proposed by the plaintiff, impair or damage said canal as a means of diverting, conveying, and delivering water for irrigation purposes by the defendant?" Answer: "No."

"(4) Will plaintiff, Salt Lake City, have sufficient water in said East Jordan canal, after its enlargement as proposed by the plaintiff, to compensate for the loss by evaporation and seepage to the defendant from its amount or share of the water?" Answer: "Yes."

"(5) If the plaintiff shall deepen the East Jordan canal one foot, as proposed by the plaintiff in this case, can the

defendant then divert, convey, and distribute every quantity of water which the defendant has hitherto for all purposes diverted, conveyed, and distributed through said canal?" Answer: "Yes."

"(6) If the plaintiff shall enlarge the said East Jordan canal to the extent and in the manner proposed by the plaintiff in this case, will such enlargement injure or damage the usableness of said canal to effectually divert, convey, and distribute every quantity of water which the defendant has heretofore diverted, conveyed, and distributed through said canal?" Answer: "No."

Those in the second group are the following:

"(2) Will the enlargement of the East Jordan canal, in the manner proposed by the plaintiff, impair or damage said canal as a means for diverting, conveying, and delivering water for culinary and other domestic purposes by the defendant?" Answer: "Yes." .

"If you answer 'Yes' to this question, state how much in dollars and cents the damage for such impairment will be." Answer: "Twenty-five thousand ($25,000) dollars."

"(3) Will the entrance and occupancy of defendant's right of way in said East Jordan canal, as proposed by the plaintiff, interfere with said right of way so as to prevent the defendant from diverting, conveying, and delivering water to the water users, under said canal, as certainly and effectually as it now does?" Answer: "Yes."

"If you answer 'Yes' to this question, state how much in dollars and cents the damage for such interference will be." Answer: "Fifty thousand ($50,000) dollars."

In connection with the foregoing questions the court also gave the jury a large number of instructions, about all of which are excepted to by appellant's counsel, and which exceptions are now insisted upon. For the purposes of this decision we do not deem it necessary, however, to set forth more than one of the many instructions excepted to as aforesaid, which one reads as follows: "(4) The jury are instructed that in determining what is just compensation they may include consideration of every element of usefulness

or advantage in that property if it possesses advantages of location or availability for any useful purpose whatever. All these belong to the owner, and are to be considered in estimating the usable value of the property. You are to consider the location and elevation of the property, the convenience or inconvenience of it with reference to the source of water supply, the width and character of the right of way, the existing capacity of the canal to carry water, its advantages or disadvantages as to the point of destination to which water may be delivered through it; in fact, in determining the usable value of the canal, everything which enhances such value or depreciates its worth should be taken into consideration." We remark that the charge of the court as a whole very closely follows the theory upon which charges in condemnation proceedings where property is taken and damaged are usually based. At this point it is convenient to dispose of at least two of respondent's claims which arise upon its cross-appeal, namely: (1) The validity of section 1288x22, *supra;* and (2) whether the proposed enlargement of respondent's canal is for a public purpose, and whether such enlargement is necessary in order to permit appellant to supply the needs for water of at least a considerable portion of its inhabitants.

In view of what is said by this court in *Nash v. Clark,* 27 Utah, 158, 75 Pac. 371, 1 L. R. A. (N. S.) 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300, the use that appellant seeks to make of the canal when enlarged is certainly a public use.

The proceeding which we are now reviewing, while ostensibly based upon section 1288x22, *supra,* is, nevertheless, controlled by the principles involved in the exercise of the right of eminent domain, and what is said in said section must likewise be viewed and considered in the light of the principles aforesaid.

The contention of respondent's counsel, therefore, that section 1288x22, *supra,* is unconstitutional because it does not provide for making the compensation contemplated by the Constitution of this state for taking

or damaging private property for public use, is to our minds clearly untenable. The section in terms provides for making compensation "to the owner of the canal or ditch to be enlarged, for damages, if any, caused by said enlargement." What more does the Constitution of this state contemplate or require? All that that instrument forbids is that "private property shall not be taken or damaged for public use without just compensation." Article 1, sec. 22. No attempt is made in section 1288x22, *supra,* to sanction what the Constitution forbids, and hence it is clearly not an invasion of that instrument.

The contention that no necessity for enlarging the canal is shown requires no special comment. We think the evidence is ample to support the court's finding and decree upon that subject.

We will now proceed to a consideration of the principal question arising upon appellant's appeal, namely: What is the measure of damages that should prevail in proceedings of this kind? In other words, what rule should be adopted in ascertaining and determining the "just compensation" required by the Constitution to be made to the owner of the canal which is sought to be enlarged?

Upon this question counsel for the respective parties are hopelessly at variance. With respect to the measure of compensation that should control in this proceeding, counsel for appellant in their brief say: "We contend that the measure of compensation is *the amount of decrease, if any, in the value of the use of the East Jordan canal for canal purposes, which shall be caused by the enlargement thereof by the city for its purposes;* the use by the city for its purposes being exercised jointly with the use of the respondent company for its said canal purposes." The nearest that we can arrive at the theory of counsel for respondent, when expressed in their own language, is gleaned from an objection they interposed at the trial, in which, among other things, they said: "The plaintiff (appellant), under no rule of law, is entitled to a decree or order of court authorizing it to take possession of our property and change its character and re-

construct it, unless it take our entire property and pay therefor." The contention of counsel for respondent, in effect, is that to enter upon its canal and to enlarge, and use it as contemplated, amounts to a taking of its property which cannot be done without paying the value thereof. If this be not done, they contend then the constitutional provision with regard to making "just compensation" is disregarded. The contention stated in another form is that, if appellant is permitted to enlarge respondent's canal and to use it, then appellant is obtaining a right of very great value to it, and therefore, expressing it in counsel's own language, when "reduced to plain English, the proposition is this, that whatever the city and the public gain by this proceeding the East Jordan Irrigation Company (respondent) must of necessity lose." We think that the fallacy of counsel's whole argument is practically outlined in the assumption contained in the foregoing statement, namely, that respondent necessarily loses and is entitled to receive compensation for what appellant gains by the enlargement and use of the canal. We have had occasion to consider the proposition involved in the foregoing statement in the recent case of *Tanner v. Provo, etc. Canal Co.*, 121 Pac. 584, not yet officially reported, and we refer counsel to the authorities we cited in that case. We shall therefore do no more now than to point out the difference between the facts in this case and those in that one, and enlarge somewhat upon the reasons why we think that the theory of counsel for appellant respecting the measure of compensation is in the main correct, and why, upon the other hand, we are of the opinion that the legal propositions advanced by respondent's counsel are untenable.

All of respondent's contentions that its property may not be taken or damaged, or any of its property rights invaded and curtailed without making just compensation therefor, are conceded. Is it not manifest, however, that where the owner continues the use and enjoyment of his property and property rights to the same extent and for the same purposes after the contemplated change is made as he did before, then, to say the least, his property is not

taken from him, and may not have been injured or damaged, except by the invasion of a theoretical legal right? Assuming, for the purpose of illustration, that respondent has acquired an easement consisting of a right of passage over lands, which passageway it could extend at will limited only by its necessities; that this easement was obtained as a passage or footway for its employees consisting of several thousand young men who are engaged in transporting and delivering on foot to respondent's customers who live along the passageway fruit of all kinds produced and done up in small packages by respondent; that, while the right of way itself is not specially limited, yet that the footpath used by the young men had to be specially prepared for use and at most places was prepared only wide enough to permit one man to pass at a time with sufficient places for turnouts for the men going in opposite directions to pass one another and for side paths to reach the several fruit users living along the passageway; that respondent had at great expense prepared the footway, and that it answered every purpose necessary to transport and deliver the packages of fruit to the users thereof; that appellant was engaged in a like business, and, to extend the same, is entitled to exercise the right of eminent domain; that appellant has a great number of customers who live beyond the end of respondent's footway, and appellant as a means of serving such customers can make use of the footway by enlarging it; that such enlargement can be made, and, after it is made, can be used by both appellant and respondent without the use by one interfering with the use of it by the other; that the young men employed by the respondent can pass over the footway in either direction and from the footway onto the diverting paths and from them back again onto the main footway without being hindered, molested, or interfered with in any way or to any extent by appellant's men similarly engaged; that, while the number of men and the packages delivered by them may decrease at times, yet neither the one nor the other can ever increase, and respondent can neither now nor hereafter require a greater footway than the one prepared for and

in use by its men as aforesaid—assume that the foregoing correctly reflects the conditions that prevail with respect to respondent's and appellant's use of the footpath, how can it be contended that appellant has taken or deprived, or is about to deprive, respondent of any property, property right, or any other thing possessing a substantial value? Nor, under such circumstances, can it be said that respondent would be interfered with in its use and enjoyment of its property and property rights. Now, in what way does appellant's proposed enlargement and use of respondent's canal differ from the supposed enlargement, enjoyment, and use of the supposed footway? Assume that each cubic foot of water represents a man with a package of fruit, and there is no essential difference. Respondent's and appellant's men would, of course, retain their identity while their water might mingle in passing down the canal, and that would be the only difference. Whenever and wherever respondent desires to divert a portion of its water into a lateral ditch for use by some individual user this can apparently be accomplished just as well after the canal is enlarged as it can now be. But, if this should not be true, then whatever damage respondent can show that it directly sustained in that regard is an element to be considered and adjusted before permitting the enlargement and use of the canal by appellant.

Let us present another illustration. Assume that A. owns an easement consisting of a passageway over lands owned by another, which passageway A. uses for a special and limited purpose, and can use it for no other. Assume further that B. is the only person who can also use A.'s easement for a similar purpose, which use constitutes a public use. B. now seeks to condemn the right to use the passage way jointly with A., and, if B.'s application is allowed, his use of the passageway will in no way interfere with A.'s use thereof, but both can use it and serve a public purpose without interfering with each other. If this be permitted, it may be that B. is manifestly benefited, but, if so, does it follow that A. is injured or damaged to the same extent

that B. is benefited? In other words, has A. lost what B. and the public have gained? There is, there can be, but one answer to the proposition. From the foregoing is it not manifest that counsel's contention that whatever is gained by appellant in being permitted to enlarge the canal must necessarily be a corresponding loss to respondent is thoroughly groundless and fallacious? As a further illustration of counsel's fallacious reasoning, it may be said that such a result does not follow, even where the property is actually appropriated by the exercise of the right of eminent domain under ordinary circumstances. A strip of land of but small value to the owner may be condemned, and the condemner may realize from it by the use he puts it to $100 for every dollar he pays to the owner, and yet the condemner's gain is in no sense a loss to the original owner of the land from whom it was taken, nor is he entitled to profit thereby.

The foregoing remarks apply, however, only to the enlargement and joint use of the canal by appellant and respondent. In connection with said enlargement and use there are some special features involved in this proceeding, which, to some extent at least, are reflected by special findings numbered 2 and 3. Finding No. 2 is based upon the evidence that in enlarging the canal the appellant will at least temporarily interfere with the distribution of water "for culinary and other domestic purposes." The difficulty in this regard is not so much with the findings as it is with the admission of the evidence upon which the finding is based. In so far as the evidence shows that respondent will be injured or will suffer damages by appellant's entering and enlarging the canal, the allowance of damages so suffered by respondent is not only proper, but the law imperatively requires that such allowance be made. The evidence admitted upon this branch of the case, as we read the record, was, however, not limited to the damages that respondent as a corporate entity will suffer, but it included all the damages that individual water users may sustain by reason of being temporarily deprived of the use of or being interfered with in the use of their water for the

domestic purposes aforesaid. While the water users who are also stockholders of the respondent undoubtedly will be bound by any judgment that may be rendered in this proceeding so far as it in any way affects the rights of the respondent as a corporate entity and as it may affect the stockholders as such, yet the stockholders cannot be bound in case appellant invades what is purely the private right of the stockholder, and in that way damages him in a matter which does not affect the corporation. The corporation does not represent the stockholder in his private rights or affairs, and hence cannot bind him, although it seeks to do so in an action or proceeding to which he is not a party. Let us apply the foregoing principle to this case. Assuming that A. as a stockholder of respondent, and a water user under the canal, has 500 head of cattle which must be watered daily; that in entering upon the canal and enlarging it appellant so interferes with the diversion of the water from the canal that A. cannot obtain any water therefrom, and is compelled to obtain water for his cattle elsewhere for the space of a week or ten days, or until appellant has again placed all of the diverting appliances in place, so that A. may again obtain water as before, and that A., by reason of having to obtain water elsewhere, or for any other reason directly attributable to appellant's interference with the diversion of water, is damaged to the extent of $500, assuming now that respondent receives these damages in this proceeding and turns the same into its treasury—how will A. obtain recompense for his injuries? Again, may it not be, indeed, would it not be almost impossible to be otherwise than, that some stockholders as water users are damaged more than others, and that the damages, if any, may not at all be controlled or governed by the amount of stock any one of them holds in the corporation? If, therefore, the respondent is permitted to prove and recover any special damages that any individual stockholder may suffer, then such stockholders as may not have suffered any damages may nevertheless be benefited by receiving out of the treasury of respondent a portion of the damages that are suffered by the other stockhold-.

ers. In other words, the corporation is permitted to recover for the benefit of all the stockholders, that which only a few may have suffered, and where no two may have suffered to the same extent. For the foregoing reasons we think the rule that a judgment against the corporation binds the stockholder only in matters which directly affect the corporation in its rights and liabilities is manifestly sound. Upon both the questions involved in special findings 2 and 3, therefore, we think the evidence should be confined to matters which may affect and damage the corporation in its rights, since such special damages as will be suffered by the individual stockholders in their individual rights cannot be adjusted in this proceeding, since the proceeding is intended to fix and adjudicate the damages respondent will suffer, and not those that others may sustain who are not parties to the proceeding. It would be unjust to require appellant to pay to respondent what belongs to another, and especially in a case where the loss can only be ascertained when the rights of such other are interfered with. We are clearly of the opinion, therefore, that the trial court proceeded upon a wrong theory with regard to the measure of damages.

In view that the judgment must be reversed, it becomes necessary for us to lay down some rule for the guidance of the trial court in arriving at the conclusion of what constitutes just compensation in a case like the one at bar. We again refer to the authorities cited by us in *Tanner v. Provo, etc., Co., supra,* for a clear definition of what is meant by the term "just compensation." Where, as in this case, property is not taken, just compensation is made when the owner receives compensation for whatever damages, if any, he sustains by having the use he is making of the property interfered with. If the owner continues in the possession and use of his property after the proposed improvement the same as before it was made and no part of his property is actually taken, and where there are no additional costs or expenses incurred in either the use or maintenance of the property by reason of the improvement, then we can see no escape from the conclusion that the owner can

sustain only nominal damages, and cannot recover more. While, in view of special findings 1, 4, 5, and 6, it would seem that respondent will sustain only nominal damages by reason of the enlargement and use of the canal by appellant, yet the evidence is not conclusive upon that point; and, in view that the jury may have taken a wrong view of the evidence in that regard, it may be that respondent may be entitled to receive damages by reason of having to change some of its diverting appliances. Whether this be so or not may depend somewhat on whether appellant enlarges the canal by deepening or by widening it. It may be that, in case the canal should be deepened, the appliances now used for diverting and distributing water from the canal into the lateral ditches might be inadequate for that purpose. At all events, this might be so during the low water season. True, if appellant continues an increased flow of water in the canal during the whole year, then it is quite possible that, although the bottom of the canal may be lower, yet the increased flow of water may still make the present means of diversion quite as available and useful after the enlargement as they now are. Upon the other hand, if the canal were deepened and the flow of water not increased in certain seasons of the year, different diverting appliances may be required. This question, therefore, is one which must be determined from the evidence. Again, it is made to appear that respondent owns the land traversed by the canal for a distance of more than a mile. In making the enlargement of the canal, appellant must thus appropriate some land belonging to respondent, which, although shown to be rocky and sandy, yet must be assumed to possess some value, however small. Whatever this value is shown to be must be allowed as compensation for land taken. For that portion of the canal where respondent does not own the land but simply has a right of way, it, of course, cannot claim compensation for what it does not own, and for that part of the canal respondent could only recover damages or compensation in accordance with the rules hereafter stated.

It is self-evident that an irrigating canal constructed along the contour of arid hills and mountains without water must be about as useless and worthless a thing as could well be imagined. True, there might be some material used in its construction that might be used for some other purpose, but all such would still be owned by respondent as well after as before the enlargement, and, in case the canal were abandoned, would be its property. In view of the conditions prevailing and the purpose for which the canal is used, and the large number of people depending upon it, an abandonment seems impossible. Nor, in view of all the facts and circumstances disclosed by the evidence, is there much, if any, merit to the contention that appellant is taking something from respondent by making use of those portions of the canal which are already nearly, if not quite, large enough to receive and convey the proposed increase of flowage contemplated by appellant. If it were shown that respondent either had water, or that it intended to and could acquire additional water for conveyance through the canal either presently or at some future time, and that it thus intended to and could make use of the wider spaces of the canal by enlarging its capacity, then there might be some virtue in its claim that it was deprived of something valuable. In making compensation for taking or damaging property by the exercise of the right of eminent domain, two elements must be considered: (1) Is there any property taken or damaged in fact; and (2) if so, what is the value in dollars, or, in case it is only damaged, what is the money value of the damages sustained by the owner thereof? Assuming, therefore, that the canal at certain places is already large enough to convey the additional amount of water appellant desires to convey through it, the question still remains, In what way does this affect, injure, or damage respondent? If respondent neither loses anything of value, nor is damaged by reason of appellant's use of space for which respondent did not have nor can make any use, and such space has no substantial value, what has respondent lost? We repeat, just compensation does not mean the value of what appellant as

condemner gains, but it means that the respondent must re- ceive the money value of the injury and damages sustained by it, and whether such damages are caused by reason of the taking, damaging, or by the interference with the use of the property does not change the rule of compensation. In condemnation proceedings the question, under no circumstances, can be what has the appropriator gained; but it is, what has he from whom the property is taken or in whose hands it is damaged lost, when such loss is expressed in dollars and cents? This is the question, and the only question, to be solved in this case.

In order to arrive at a correct solution of it, in our judgment, the material elements to be ascertained and considered are: (1) The value of the land owned by respondent which is actually taken, and, if any be damaged, the amount of such damage. (2) In what way, if at all, and to what extent, if any, are the diverting appliances used by respondent in diverting and delivering water to the users thereof interfered with or affected so as to require them to be changed by reason of the enlargement and use of the canal, and, in case any or all of such appliances are thus affected, what is the amount in dollars and cents of respondent's injury or damage in that regard? (3) To what extent, if at all, is respondent damaged in case the diversion of water for culinary and domestic purposes is temporarily interfered with? In this item the damages, if any, that may be suffered by individual water users, should not be included. (4) Keeping in view the facts and circumstances to which we have alluded, is the respondent damaged, and, if so, to what extent in case appellant is permitted to make use of the existing enlarged portions of the canal which respondent is not using for the flowage of water, but which, to some extent at least, will be used by appellant in case it turns its water into the canal. In view of all the circumstances, have these wider portions any substantial value, and, if so, how much? (5) After considering the foregoing special features, then, in view that it is contemplated that respondent will continue to use and control the canal as be-

40 Utah—10

fore the enlargement, will such enlargement and the joint use of the canal as contemplated interfere with respondent's use thereof as a means for diverting, conveying, and delivering the water owned by it to the water users under said canal, and, if the usable value thereof for the purposes aforesaid is less after the enlargement and interference than it was before, what is the difference of such value? In other words, the question upon this branch of the case is, Will what appellant has in contemplation by the enlargement and use of the canal diminish the usable value to respondent as a convenient means for diverting, conveying, and delivering its water to the users thereof? All questions except such as may have some bearing upon or may assist in ascertaining the foregoing results should be eliminated from the case.

From what has been said all of the exceptions to the various instructions given or refused have been covered, and need no further consideration. This is likewise true respecting the exclusion and admission of evidence. What we have said also answers respondent's contention with respect to the elements of damages that it contends should be allowed.

Nothing remains save to consider the case of *Canadian Pac. Ry. Co. v. Moosehead Tel. Co.*, 106 Me. 363, 76 Atl. 885, 29 L. R. A. (N. S.) 703, 20 Ann. Cas. 721, to which we have been referred by respondent's counsel since the case was finally submitted. Since counsel seem to place great reliance upon that case, we have carefully examined it, and we thoroughly agree with the principles there laid down. In our judgment, however, there is nothing in that case which in any way or to any extent conflicts with the principles announced in the cases to which we have referred in the case of *Tanner v. Provo, etc., Co., supra,* or with what we have said in this opinion.

The judgment is therefore reversed, and the cause is remanded to the district court of Salt Lake County, with directions to grant a new trial upon the question of damages only, and to proceed with the case in accordance with the views herein expressed, appellant to recover costs.

McCARTY, J., concurs.

STRAUP, J. (dissenting).

About thirty years ago the respondent, to convey water by gravity for irrigation and domestic purposes from the Jordan River, constructed, at a cost of $300,000, a canal about nineteen miles long from the river at the Jordan Narrows, in a northeasterly direction along the foothills of Salt Lake valley, to a point near Union on Little Cottonwood Creek about fourteen miles south of Salt Lake City. In the construction of it, and to obtain required elevations to flow the water, it was necessary to traverse an uneven and broken country, at some places to remove at great expense gravel, rock, and other hard material, at others, to fill ravines and depressions. For a distance of about one and one-half miles the land over which the canal is constructed is owned by the respondent. For the remaining distance the respondent acquired and holds an easement or right of way over lands owned by others. The canal, the right of way, and the use of the water carried in the canal, are owned by a stock company whose shareholders, about 375 in number, own and live on the lands, about 16,000 acres, irrigated from this source, except the plaintiff, who owns 1600 shares out of a capital stock of 8000 shares.

The appellant also is the owner of a canal about twenty-nine miles long from Jordan River to Salt Lake City in which other water belonging to it was originally conveyed from the river to Salt Lake City for irrigation purposes, sprinkling streets, and other beneficial purposes. Its water is not potable. It has exchanged much of it to farmers in the valley below the city for potable water from mountain streams. It desires to make other like exchanges. Its intake at Jordan River is about fifty feet lower in elevation than that of the respondent. If it is permitted to course its water now conveyed in its own canal through that of the respondent's, the city, because of the difference of the elevation at the intakes, and for other reasons, will be enabled, as it alleges, to make better and more exchanges of unpotable for potable water. The respondent's canal at places is but large enough to convey its own water, at other places,

much larger, and at some places is large enough, or nearly so, to convey both the waters now conveyed therein by the respondent and that of the city now conveyed by it in its own canal. The city seeks to convey that water in the respondent's canal by enlarging it where necessary, and, when enlarged, to use the whole thereof in common with the respondent for the purposes mentioned.

The condemnation by the city is not claimed under the general statute providing for the condemnation of property for a public use. It is claimed under the statute referred to and quoted by the Chief Justice. The conditions under which one may enlarge a constructed ditch or canal of another against his will and to use it in common with such other are there specified. The city's canal is large enough to convey, and has conveyed, all the water from the river owned by it. It runs directly from the river to the city. The respondent's canal sought to be enlarged and used by the city in common with the respondent does not come within fourteen miles of the city. The city does not claim that it cannot convey its water now conveyed by it in its canal to the city, but does claim that to make the exchanges it can convey and deliver it to a better advantage in and from the canal of the respondent, and that, if it is permitted to do so, it can make better and more advantageous trades. Its purpose of enlarging the respondent's canal is not to enable it to carry its unpotable water to the city for the use of the city and its inhabitants, but to enable it to more advantageously exchange and deliver its unpotable water to others down the valley for potable water. While that on behalf of the city might be a desirable and profitable thing to do, yet I think it doubtful whether the statute gives one the right to abandon a ditch or canal of his own, and to convey his water in that of his neighbor, merely because it is more convenient, or profitable, or advantageous to do so, or because his neighbor built a better ditch, or canal, and more prudently and wisely selected a better route or proper place of intake. The statute giving a person the right to enlarge a ditch or canal of another against his will, and to use it in common with him, seems

to be based, not upon a mere convenience or profit or advantage, but upon a necessity specified in the statute. And, as the former and not the latter is the chief purpose for which the city seeks to enlarge the respondent's canal and to use it in common with the respondent, I think it very doubtful whether the city has brought itself within the statute giving it the right to condemn. The trial court, however, found that such a necessity exists, and so instructed the jury.

Even though it should be conceded that a public necessity exists for the condemnation, and that the city under the statute has the right to condemn as sought by it, still the further and principal question here is that of compensation viewed in the light of the statute and the facts. Before coming to the main feature of this, I wish first to dispose of a matter incidental to it, that of special damages, not to the respondent, but only to one or more of its stockholders. Some evidence of that character, or at least bordering upon it, was received by the court *pro forma,* with the understanding that, if it was not subsequently made relevant, a motion to strike would be entertained. No such motion was made. The court, however, in its charge, directed the jury not to consider or allow any such element as damages. We must presume, until the contrary is shown, that the jury obeyed that direction. And by the special verdict, as rendered, it expressly appears that the jury did not allow any damages based upon special or any damages or injury to a mere stockholder. The general verdict simply redeclared the amount, and no other, found by the special verdict. So whatever error was committed in so receiving the evidence was cured by the charge, and upon the face of the findings of the special verdict is harmless.

Now reverting to the main feature: We, like most states, have constitutional provisions in harmony with the United States Constitution that "private property shall not be taken or damaged for public use without just compensation," and that no person shall be "deprived of property without due process of law." The legislature, of course, cannot abridge these constitutional provisions. Any statute which permits

private property to be taken or damaged without just compensation admittedly is for naught. But it is claimed that the statute under which the condemnation is sought provides that a person under the conditions there specified has the right to enlarge a canal or ditch already constructed by compensating the owner of the canal or ditch to be enlarged "for the damage, if any, caused by said enlargement;" and since the statute only uses the word "damage," and not also "take," the legislature, in effect, has declared that the enlarging of a ditch or canal under the conditions prescribed by the statute is not a taking of, but may or may not be only a damage to, property, and for that reason the statute does not contravene the constitutional provision that private property "shall not be taken or damaged without just compensation." Such an interpretation of the statute, I think, renders it in conflict with the Constitution; for the legislature may not declare what shall or shall not constitute a taking, or what shall or shall not constitute a damage or an injury. The determination of such questions is judicial. And a legislature which should undertake to declare what shall or shall not be a taking, or a damage, would invade the prerogatives of the judiciary. Neither argument, nor the citation of authorities, it seems to me, is needed to show that a statute which attempts to authorize a taking of private property for public use without providing for just compensation, or to declare that the doing of something is not a taking, which in fact is such, is unconstitutional. The statute here should be read and construed in connection with the Constitution. When so considered, if the former can be construed in harmony with the latter, that construction ought to be given it, and the statute held good; otherwise, it must be held bad. This statute was before this court in the case of *Nash v. Clark,* 27 Utah, 158, 75 Pac. 371, 1 L. R. A. (N. S.) 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300, and in the same case before the Supreme Court of the United States, 198 U. S. 361, 25 Sup. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171. The objection there urged against the statute was that the proposed use by an individual of an enlarged ditch was

not a public use. The opinions of both the state and Federal Supreme Court are confined to a consideration of that question. Both held it to be for a public use. No other question was considered by either court. The question of whether the statute was objectionable because it only provided for compensation for a damage to property, and not also for a taking of property, seems not to have been raised or considered. Both courts seem to have regarded the statute as providing compensation for a taking or damage and as being in that particular in harmony with the Constitution that private property shall not be taken or damaged for public use without just compensation, and confined the consideration of the question of the validity of the statute to the objection raised that the things authorized by the statute was a taking not for a public use. Both courts treated the things permitted to be done as a taking of property, but held it to be a taking for a public use. This is apparent from the language in the opinion of the state court where the court, after referring to the constitutional provisions mentioned, says:

"This provision is construed to mean that private property cannot be taken for strictly a private use, which counsel for respondent concede to be the true and proper construction. This brings us to the only question presented by this appeal, to wit: Was the condemnation of appellants' land in this case in law and in fact for a public use?"

and from the language in the opinion of the Federal Supreme Court:

"We do not desire to be understood by this decision as approving of the broad proposition that private property may be taken in all cases where the taking may promote the public interest and tend to develop the natural resources of the state. We simply say that in this particular case, and upon the facts stated in the findings of the court, and having reference to the conditions already stated, we are of the opinion that the use is a public one, although the taking of the right of way is for the purpose simply of thereby obtaining water for an individual."

Since both these courts treated the statute as being in harmony with the Constitution, and as providing for com-

pensation not only for a damage to, but also a taking of, property, and that the things authorized by the statute might not only be a damage to, but also a taking of, property, I, too, shall so regard and consider the statute. I do not see on what other theory its validity can be upheld. The trial court so regarded the statute, and as so providing for compensation not only for a damage to, but also a taking of, property, and on such theory submitted the case to the jury.

The further question, then, is, Do the things here sought to be done constitute a taking of, or only damage to, property, or both? This, as I view it, is the crucial point which chiefly divides the parties. The determination of that question must be determined from what is in fact sought and permitted to be taken, and what, in fact, are the consequences occasioned by the condemner by its proposed enlargement and use of the canal. The city alleged that the respondent "is the owner of a right of way and canal" described in the complaint; that the city "intends to take and condemn an easement and right of way through and along the canal of the" respondent, and as shown by a map attached to the complaint; and that the use of respondent's "canal and right of way hereby sought to be taken and condemned is intended to be, and will be, used by the plaintiff in common with the defendant in its use of the same." Its prayer is that it be given a perpetual right of way and easement for the diversion and conveyance of 1.84 cubic or second feet of water through the respondent's canal, and that it for that purpose, be permitted to enlarge the canal by widening and deepening, or by narrowing and deepening it, and, when so enlarged, to acquire an interest in the whole canal, and to use it in common with the respondent. Notwithstanding these allegations, the city contends that by the proposed condemnation and enlargement of the respondent's canal, and the using of it in common with the respondent, it nevertheless does not take anything, except the alleged worthless land owned by the respondent upon which a very small portion of the excavations of the proposed enlargement is to be made; that the enlargement of the canal, and the proposed use of

the whole thereof by the city in common with the respondent, when enlarged, is no damage to the respondent, for, it asserts, that, after such enlargement and common use as proposed, the respondent can still use the canal to the same advantage, and with the same beneficial results for the conveyance and delivery of its waters, now conveyed by it, as it could and did before the enlargement was made. Its position on this point is best shown by a request to charge asked by it, its exception to the court's refusal to give it, and its exceptions to portions of the court's charge, upon which exceptions its chief complaint is based. It requested: "If you find from the evidence that the entrance upon, and occupancy of defendant's right of way in said canal, as proposed by the plaintiff, will not interfere with said right of way, so as to prevent defendant from diverting, conveying, and delivering water to the water users under said canal, as certainly and effectually as it now does, then the damage to said right of way should be nominal, and you should so find by your verdict." This the court refused, and in harmony with the Constitution charged that: "The jury are instructed that the city has no right to take or to damage the private property of the defendant, or any part thereof, without just compensation for such property and the damage thereto." And further charged that: "The defendant is the owner of the canal described in the pleadings, including the right of way, and all the rights, privileges, and appurtenances pertaining thereto. Although such canal may not occupy the entire right of way, or said company may not have used said canal, and may not use it to its full capacity, such additional or unused capacity of said canal or right of way, if any, is the property of said company, and the jury are further instructed that, such being the property of said defendant, said defendant cannot be deprived of the use of the same without due process of law, and no part of the same can be taken or damaged for public use or for the use for which plaintiff seeks to appropriate it in this case without just compensation."

The city claims that its request ought to have been given, and that the court erred in the charge because (1) by the terms of the statute the proposed enlargement and use of the canal is not a taking; and (2) because there is no evidence of a taking rendering a charge in such particular applicable. It, of course, concedes that the respondent owns the canal proposed to be enlarged, and an easement or right of way over which it is constructed, and that the city seeks to enter and occupy them, and to use the whole of them in common with the respondent, and for that purpose to acquire an interest in the whole thereof. Confessedly these things are property. Says Mr. Mills, in his work on Eminent Domain, section 31:

"The right to use property is the valuable feature of property. Property is the right to possess, use, enjoy and dispose of a thing. Under the term 'property' is included, not only the land owned, but also every right which accompanies ownership and is its incident. The right of using necessarily includes the right and power of excluding others from using the same property. The Constitution is intended to protect all the essential elements of ownership which make property valuable, and, when an easement of any sort is taken in property, a certain portion of the property is taken, and that taking requires compensation. Easements which owners have over the lands of others are property, and a taking or interference with the same is a damage for which compensation should be paid."

Said the court in the case of *Trippe v. Overacker,* 7 Colo. 72, 1 Pac. 695, where condemnation, by the enlargement of a ditch was sought, under a statute analogous to ours:

"The proprietor of an irrigating ditch, whether upon his own premises or those of another, has a property ownership, both in the ditch and the right of way therefor, and using or enlarging such ditch without the owner's consent is as much a taking or damaging of private property within the meaning of the Constitution as would be the appropriating of the right of way therefor in the first instance. But such taking or damaging cannot be tolerated except upon payment in a constitutional manner of just compensation. . . . The right to enlarge and use the ditch of another already constructed will be enforced in the same manner and under the same law as the right to take or damage any other kind of private property."

The same court, again speaking of the proprietor's right of way over which he had a constructed ditch sought to be enlarged and used by the condemner, in the case of *Sand Creek Lateral Irrigation Co. v. Davis,* 17 Colo. 326, 29 Pac. 742, said:

"The property taken or sought to be taken was a right of way through defendant's ditch. Such right of way was the property of the defendant. It is true petitioner did not seek to deprive defendant of its rights of way altogether, but he sought to acquire an interest therein to be used in common with the defendant. Such right of way had a money value, and the interest which the petitioner sought to acquire therein also had a money value."

I do not think either the case of the *Postal Tel. & Cable Co. v. O. S. L. Ry. Co.,* 23 Utah, 474, 65 Pac. 735, 90 Am. St. Rep. 705, or that of *Chicago, Burlington, etc., R. Co. v. Chicago,* 166 U S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979, cited by the city, and relied upon by the majority members of the court in support of the city's contentions, are in point. In the first case the condemner, the Postal Telegraph Company, under a statute expressly conferring the right, sought to condemn a right of way over a right of way of the railroad company for the purpose of erecting thereon telegraph poles and stringing wires upon them for the use of a telegraph business. This was sought upon the theory that, where lands already taken and appropriated to a public use for railroad purposes, such lands so taken and appropriated for such purposes are subject to another public use, if such other use does not supersede or interfere with the former use. It was there held that, while such proposed use by the telegraph company was a taking of property of the railroad company, yet the value of the property so taken, and the amount of damages suffered by it, were but nominal, because the only property right which the railroad company had, and which it claimed was invaded, was a mere easement or right of way, and that that was not superseded or interfered with. But the telegraph company did not there seek to enlarge or condemn the railroad track or right of way of the railroad company, and to use it in common with the railroad company,

or to enlarge, or add to, its telegraph poles, or arms or wires upon them, and to use them in common with the railroad company. Nor did it seek to enter upon or occupy, or to acquire any interest in, any of these physical or corporeal things. It did not seek to engage in the railroad business and to operate cars upon the track or roadbed of the railroad company, or to conduct a railroad business upon its right of way, or to use any part of its property for such a purpose.

In the other case the city of Chicago sought to open or extend a public street, and for that purpose condemned lands of individuals and a small portion of a right of way of the railroad company across which the street was proposed to be opened or extended. The jury allowed the individuals whose lands were taken for that purpose substantial damages. It allowed the railroad company only nominal damages. The railroad company complained of that because, as it asserted, the value allowed for its property taken was so inadequate as to constitute a taking of property without compensation, and that the action of the jury in assessing the damages was discriminatory. Again, the court held that, though there was a taking, yet the value of the thing taken from the railroad company was but nominal, because the placing of the second easement for a public use, the opening or extending of a public street across the railroad's right of way, in no way materially superseded or interfered with its easement or conduct of its business. Said the court:

"Compensation was awarded to individual owners upon the basis of the value of the property actually taken, having regard to the uses for which it was best adapted, and the purposes for which it was held and used, and was likely always to be used. Compensation was awarded to the railroad company upon the basis of the value of the thing actually appropriated by the public— the use of the company's right of way for a street crossing— having regard for the purposes for which the land in question was acquired and held, and always likely to be held. In the case of individual owners they were deprived of the entire use and enjoyment of their property, while the railroad company was left in the possession and use of its property for the purposes for which it was being used, and for which it was best adapted, subject only to the right of the public to have a street across it."

How unlike, it seems to me, these cases are to the one in hand. Here the condemner, the city, is not seeking to have a mere easement for a public use placed across or upon another easement for a public and wholly dissimilar use, like that of extending a street or building a bridge across the respondent's right of way, or placing telegraph or telephone poles upon and along its right of way. It seeks not only in part to occupy, take, and condemn the respondent's right of way, but also in part to occupy, take, and condemn the canal itself, constructed by the respondent at a cost of $300,000, the most valuable part of its property, and to acquire an interest in the whole thereof, and to use it in common with the respondent for all time to come without any substantial compensation. True, as said by the Colorado court, not for an exclusive use, by the condemner, but for a common and equal use and interest therein with that of the respondent. The theory of the city, and as embodied in its refused request, that by the proposed enlargement and use of the canal in common with the respondent it does not take anything from the respondent, is based on the ground that the enlargement and common use will not interfere with the respondent's particular use of the canal as it was then, and prior to the condemnation had been, used by it. That is, if the respondent after, as before, the enlargement, can as readily convey and deliver its waters owned and conveyed by it before the enlargement, then the city has taken nothing from the respondent, nor has it damaged it in any substantial sum. That is but to say that if a proprietor has a house of five rooms, and the condemner, if the right so to do were conferred, enlarges the house by adding five more rooms, and by so doing acquires an interest in the whole house and a right to use the whole thereof in common with the proprietor, the condemner has taken nothing from him; the proprietor still being able to house and shelter his family, and use the building for household purposes after as before the condemnation. To the extent that the condemner occupies the house, the lands, the appurtenances, the easements, etc., of course he takes. But the proprietor also has the

right to an exclusive possession of his premises, the sole right to use, to enjoy, to dispose of, and to exercise dominion over, them.  These are all property rights, and in such case would clearly be invaded and taken from the proprietor.  So here, to the extent that the city seeks to enter, occupy, and use the respondent's canal, its right of way, and its lands, I think it should be held a taking.  So, too, the respondent, as any other proprietor, has the right to an exclusive possession of its property, to the sole right to use, to enjoy, to control, and to dispose of it.  By the proposed condemnation these rights are also clearly invaded and taken from the respondent.  They all have substantial value; and, when so taken, require compensation.  It may be somewhat difficult to ascertain the amount of that value, as well as the amount of the value of the canal and right of way confessedly sought to be entered upon and occupied by the city, and in which an interest is sought to be acquired by it.  There may be many cases where the determination of the amount of the value of the property taken or damaged, and many instances where the determination of the amount of unliquidated damages is more or less uncertain, and where it is difficult to apply any particular fixed standard or rule that will do justice to the parties, and where the most the courts can accomplish is to approximate that result.  In this respect much must be necessarily left, upon the evidence adduced, to the judgment and discretion of the jury under the supervision and control of the trial court.  But because of that difficulty one who has suffered substantial damage or injury is not to be deprived of full and just compensation for the loss or injury sustained by him.

The city in its contention that the proposed enlargement and use of the canal is not a taking, and at most can only be a nominal damage, with great avidity seizes upon certain language of the court in the case of *Chicago, Burlington, etc., R. Co. v. Chicago, supra,* that "the measure of compensation," as there applied to the facts of that case, "is the amount of decrease in the value of the use for railroad purposes caused by the use for purposes of a street, such use for the purpose of a street being exercised jointly with the

use of the company for railroad purposes," and by rephrasing such statement it then seeks to apply it hereby declaring that the measure of compensation for the proposed enlargement and use of the canal by it is the amount of decrease, if any, in the value of the use of the canal for canal purposes caused by the enlargement of the canal; and, since the respondent can convey and deliver its waters in and from the canal now therein conveyed by it, after the proposed enlargement as before, therefore its damage is only nominal. Since a certain measure of compensation was properly applied to the facts in the Chicago Case, it does not follow that that measure should be applied here on wholly dissimilar facts and conditions. In the Chicago Case the city did not seek to enlarge or occupy the company's entire railroad track or roadbed from beginning to end, or any part thereof, nor to use it or any part thereof for a purpose in common with that of the company, or otherwise to use its track, or roadbed, or right of way, in the conduct of a railroad business, or to acquire any interest therein for a use or purpose for which the company was itself using it. Had the city there sought to do that, or to operate cars over the enlarged track or roadbed, or upon or over the railroad's right of way in common with the railroad company, and to be permitted to acquire an interest in the whole thereof would the court then have said that as long as the city, in the conduct of such operations and use of the property, did not interfere with the operations and use of the railroad company, as it then, and prior thereto had made of its property, the damage suffered by, and the value of the property taken from it, would only be nominal? Certainly not. Language with respect to the measure of compensation as applied to facts in a particular case which while there appropriate, still may, as applied to another and wholly dissimilar case in its facts, be entirely inappropriate. That is true here. Carrying the city's claim and the theory embodied in its refused request to a natural conclusion, they lead to this: Two persons own water obtained and supplied from a common source. Each owns 150 cubic or second feet of water. One, the first, with-

out accurate surveys or topographical engineering, constructs an inefficient ditch or canal, and unwisely and imprudently selects an improper place of intake. The flow of the water desired to be conveyed is therefore sluggish, and the entire flow desired impossible. The other, the second, selects the most feasible route, condemns or obtains a proper right of way, and upon a careful survey and topographical engineering, and upon accurately ascertained variations of levels and contour, wisely and prudently selects a proper place of intake, and constructs a good and efficient ditch or canal with a capacity of 275 cubic or second feet at a greatly increased expense over that of the first. The first, seeing the inefficiency of his watercourse, his folly in selecting the place of his intake, the unwise and imprudent selection of the route of his watercourse and the country through which his canal or ditch is constructed, and seeing the wise and prudent conduct in those particulars of the second, and seeing that by enlarging the second ditch or canal, by widening and deepening it to an increased capacity of twenty-five cubic or second feet, it then will have sufficient capacity to carry the waters of both, therefore seeks to so enlarge it, and by such means to acquire an interest therein, and, when enlarged, to use the whole canal in common with the second for the purpose of coursing therein the whole of his 150 cubic or second feet of water. And if such enlargement and use by him can be made, without interfering with the second's use of the canal or ditch, to carry and deliver his 150 cubic or second feet of water, the first, under the claim and contention here made, could be heard to say that he has not taken or acquired anything of a substantial value from the second, nor caused him anything more than nominal damage. If that be true, why not carry this doctrine and theory a little further, and say that if one owning 150 cubic or second feet of water constructs a canal with a capacity of 300 cubic or second feet, another, also owning 150 cubic or second feet of water from the same source of supply, and who has no ditch or canal, could be permitted, without compensation, to acquire an interest in the canal and to use it

to convey and deliver his water in common with that of the proprietor, if the use of such other did not interfere with the proprietor's use to carry and deliver his 150 cubic or second feet of water? That is but to say if one builds a house of ten rooms and uses only eight, another, if the right of condemnation were given, could, without compensation, take and occupy the other two, acquire an interest in and the right to use the whole house in common with the proprietor, if such other behaved himself, and did not disturb the proprietor, or interfere with his own use of the house. Should it be said that in both these latter instances there would be a taking of something of substantial value which under the Constitution requires compensation, then does it not follow that in the other there is also a taking of something, only less in extent, which also has substantial value, and which also requires compensation?

It therefore seems to me that by the city's proposed enlargement of the canal, and to enter upon, occupy, and use the whole thereof in common with the respondent, and by so doing to acquire an interest therein in common with the respondent, it not only takes the land owned by the respondent and upon which a portion of the proposed excavations for the enlargement is to be made, impairs and interferes, as shown by the evidence, with the respondent's conduct of its business in the conveyance and delivery of its own water, but that the city also occupies and takes, not exclusively, but in common with the respondent, the whole of the canal itself, and the right of way over which it is constructed, and also invades and takes from the respondent the right of a proprietor to exclusively possess and use, and to enjoy, and to dispose of his property. And, as heretofore said, these things all have substantial value, and when taken in the manner proposed require compensation. While the amount of the value of the things so taken and the amount of the damage suffered may be somewhat difficult to justily estimate and fix, yet the determination of what amount is just compensation upon the evidence adduced must largely be left to the sound

judgment and discretion of the trial court and jury. I think the city has no just complaint of the theory upon which the case was let to the jury, and, as I am not prepared to say that the verdict is not supported by the evidence, I therefore am of the opinion that the judgment of the court below should be affirmed.