STREET et al. v. MARYLAND CENT. RY. CO. et al.

(Circuit Court, D. Maryland. November 15, 1893.)

1. RAILROAD COMPANIES — RECEIVERS — IMPROVEMENTS—RECEIVER'S CERTIFICATES.

A receiver of a small, local narrow-gauge railroad, appointed on the petition of a comparatively small holder of stock, will not be authorized to issue receiver's certificates to provide for new equipment, additional sidings, and permanent structures, in order to test its earning capacity if fully developed, when the measure is opposed by all other interests, and the first mortgage bondholders are pressing for a foreclosure of

their past-due mortgage; it being apparent, furthermore, that the road could not in any reasonable time cancel the certificates, and resume payment of interest on its bonds, and that the first measure of any new owners would be to change the road to a standard gauge, thus rendering the proposed improvements useless.

**2. SAME—PRIORITIES—LABOR AND MATERIAL CLAIMS.**

Where a railroad receiver is appointed on the petition, not of the bondholders, but of a stockholder, and no earnings have been diverted to pay interest on the bonds, there is no lien or equity requiring the payment of past-due labor and material claims out of the corpus of the property by the issuance of receiver's certificates. There is, however, an equity requiring payment of those whose labor actually kept the road a going concern out of any net earnings which the receiver may realize, but these earnings cannot be anticipated by raising money on receiver's certificates, except by agreement of the parties.

In Equity. Suit by Joseph M. Street and others against the Maryland Central Railway Company and others in which a receiver was appointed for the defendant company. Heard on petitions for allowance of claims alleged to be entitled to preference, and for issuance of receiver's certificates to provide for improvements.

Stevenson A. Williams, for Joseph M. Street.

D. G. McIntosh and N. P. Bond, for receiver William H. Bosley.

John P. Poe, R. R. Boarman, and Winfield J. Taylor, for Baltimore & L. R. Co. and the Baltimore Forwarding Co., etc.

R. M. Venable and William A. Fisher, for Mercantile Trust & Deposit Co., trustee for bondholders.

L. H. Robinson, for Thomas M. Shanahan and others, laborers.

James A. Irving, for New York Equipment Co., of New York.

E. P. Keech, Jr., for Morton Safety Heating Co.

MORRIS, District Judge. The matters now before the court arise upon the petition of several classes of creditors urging the court to allow and provide for the payment of their claims as debts having a preference; also upon the reports of the receiver calling the attention of the court to the necessity for certain repairs and betterments to the roadbed, bridges, and trestles, and to the necessity for additional equipment of cars and engines in order to handle passenger and freight traffic; also upon the petitions contained in the supplemental bill of the complainant Street, filed October 16, 1893, praying the court to restrain the first mortgage bondholders from proceeding to sell under their mortgage until by improved management, and, with the roadbed and equipment put in proper condition for business, the real value of the railroad can be demonstrated by the receiver, the money to accomplish this to be raised upon receiver's certificates.

At the threshold of the question of the extent to which the court ought to authorize expenditures beyond the current earnings of the railroad is the question whether the railroad under the receivership is to be merely kept a going concern until in the regular course of legal procedure, under the bill filed for that purpose, a decree for sale is entered, or whether, as prayed in the complainants' supplemental bill, the roadbed is to be improved and its rolling stock and general equipment increased, and the whole property put in such

improved condition as to enable it to get and to do all the business which it might reasonably obtain, and so to demonstrate its earning capacity. Aside from the question how far it is ever right or within the power of a court, against the objection and protest of mortgage creditors having large secured debts, and others having a large pecuniary interest in a railroad property, to undertake such an enterprise, the facts with respect to this property and this litigation are such as to leave no doubt as to the duty of the court. This railroad in Maryland is a line about 43½ miles in length. It is a narrow-gauge local road, out of repair, and insufficiently equipped·in every particular. It is only five years since the corporation was reorganized, and yet it is now insolvent, inmeshed in complications, and with a large floating debt. There is an admitted first mortgage debt of $850,000, and a second mortgage under which $900,000 of bonds have been issued, a portion of which at least may be established to be bona fide incumbrances. The first mortgage is now in default for nonpayment of the six-months interest due last July, and under the terms of the mortgage the whole principal has been declared due. A bill to foreclose this mortgage has been filed. It is shown that the corporation cannot be extricated from its insolvency, and that there will be a sale of its property by its mortgage creditors. With respect to its income, although under the receivership the earnings have been increased, and no doubt, with the tracks and trestles in improved condition, and with sufficient rolling stock, the receiver could further increase its earnings, it is evident that in no reasonable period of time would the net earnings suffice to repay the proposed expenditures, and also pay the current interest on the admitted mortgage debt. The first mortgage bondholders appear to have been in no manner implicated in the management of the property. The installment of interest due to them was not in default until after the receiver was appointed at the instance of the complainant stockholder. Under these circumstances what justice or equity could there be in the court saying to these bondholders:

"You shall not foreclose your mortgage according to its terms under which you took your bonds. You shall go without the interest due you until the court has improved the property and ascertained its earning capacity; and, moreover, against your objections, the court will issue enough certificates of indebtedness to raise money to put the road in first-rate condition, and supply it with equipment, which indebtedness shall have priority over your mortgage, and shall be first taken out of the proceeds of the property when the court thinks the proper time has come to decree a sale?"

A further consideration in this case is the general concession of all the parties that probably the first step of any new owners would be to change the railroad from a narrow-gauge to a standard-gauge road, in which event much of the proposed expenditures would be unavailable. It is to be borne in mind, also, that the only party to the cause advocating any considerable expenditures upon the property is the complainant, whose holding of stock is comparatively small, and, coming after the mortgage debts and all unsecured debts and liabilities, he can have only a remote

chance of being benefited. All the other parties in interest strongly oppose the expenditures. There can be no doubt that this is a case in which the expenditures should be strictly confined to those which cannot be avoided, and to such repairs as are required to keep the railroad in operation, and reasonably safe for those who travel on it and those who operate it, and that the court should not approve any policy in its management which looks to preventing the bondholders from foreclosing in accordance with the terms of their mortgage, and should refuse the application for an injunction to restrain them. The safe operation of the railroad and the preservation of the property from further depreciation is the only judicial function of the court in connection with it.

Special Expenditures which will be Authorized. There are several items brought to the attention of the court by the receiver which are required by the necessities of the road, and which will be authorized. One new engine is absolutely required, and the purchase will be authorized. The purchase of a moderate number of new ties to replace any which render the road unsafe, such renewals as would be considered ordinary, necessary, current repairs, will be ordered. The strengthening of certain of the trestles by guards or other proper and necessary braces will be directed. The lowering of the tracks under North avenue, as required by the ordinance of the city of Baltimore, has been authorized. Some necessary refitting of the passenger coaches may also be directed.

Debts not incurred by the Receiver, but which he will have to Pay. The New York Equipment Company furnished for the use of the railroad certain locomotives and cars, under contracts of lease and conditional sale, retaining the title to the property and the right to reclaim the property upon default in payment of the installments of purchase money. The Morton Safety Heating Company supplied heating apparatus for passenger cars under similar contracts. All this property is now in possession of the receiver, and he cannot operate the road without it. He cannot retain it without complying with the contracts, and must pay the current installments and those which have fallen due since the property has been in his hands. He should take an assignment of the notes given for the payments in such manner as to protect his lien for the sums paid. There remains to be considered a large item of past-due indebtedness, namely, the arrears of wages due the employes of the railroad at the time the receiver was put in possession. He was put in possession May 17th, and the unpaid pay rolls for three months prior amount to over $21,000. Of this the receiver has calculated that $14,471.86 would be fairly chargeable against the road in Maryland, $6,750.55 against the road in Pennsylvania. It is apparent, however, that these claims are not all due to persons who were engaged in operating the Baltimore & Lehigh Railroad. Some were the employes of the forwarding company which had contracted to standard gauge the road. All the receiver is collecting out of which to pay any of these claims is the net income from the earnings of the Baltimore & Lehigh Railroad after paying

its current operating expenses. There is no law of the state which gives a lien upon the corpus of the property for the payment of these wages and labor claims. There is no equity as against the mortgage creditors to require them to admit these claims as prior to their mortgages. The receiver was not appointed at their instance, but at the instance of a stockholder. There was no interest paid on these bonds during the three months covered by these arrears of wages, and no diversion for the benefit of the bondholders, and, there being no default in the mortgages, they had no right to disturb the possession and management of the corporation. To say that these claims must be paid without reference to the net earnings of the road in the hands of the receiver, and that receiver's certificates shall be issued to raise money to pay them, is to give these claims a priority which the law has not provided, and which cannot be given without the consent of the bondholders any more than to other unsecured creditors. Those claims of wages of persons who were actually engaged in the practical operation of the railroad, and by whose labor it was kept going, have an equity to be paid out of any net income which the receiver may be able to realize from running the road, and perhaps it may be possible in some way to anticipate these earnings, and provide for the immediate relief of this class of claimants; but this can be done, if at all, only by agreement. I will sign orders that may be prepared in accordance with the foregoing rulings.