MONETAIRE MINING CO. v. COLUMBUS REXALL CONSOL. MINES CO. et al.

No. 3142.   Decided March 11, 1918.   On Application for Rehearing May 31, 1918.   (174 Pac. 172.)

1. TRIAL—"FINDINGS OF FACT"—SUFFICIENCY. A mere conclusion that the evidence is insufficient to authorize relief does not constitute a finding of fact, although it is so called by the court. (Page 419.)

2. TRIAL—DEFECTIVE FINDINGS—EFFECT. Where purported finding of fact is a mere conclusion that the evidence is insufficient to authorize relief, the legal effect thereof is the same as though court had sustained a general demurrer to the complaint and had dismissed the action. (Page 419.)

3. EMINENT DOMAIN—USES—MINING—STATUTES. Comp. Laws 1907, section 3588, as amended by Laws 1909, c. 47, enumerating the purposes for which the right of eminent domain may be exercised, and section 3590, specifying property subject to condemnation, con-

strued to make mining a public use that can be furthered by right
of eminent domain.   (Page 421.)

4. EMINENT DOMAIN—TUNNELS—JOINT USE.  Owner of mining claim
   may condemn right to joint use of a tunnel for purpose of trans-
   porting ore, where tunnel is not being used to full capacity by
   owner; Comp. Laws 1907, section 3588, subd. 6, as amended by
   Laws 1909, c. 47, granting power to condemn right of way for
   tunnel purposes, and section 3590, subd. 5, providing that such
   right of way shall be subject to a limited use in common with the
   owner.   (Page 421.)

5. EMINENT DOMAIN—DELEGATION OF POWER—CONSTRUCTION OF STAT-
   UTES.  A statute granting the right of eminent domain for a par-
   ticular purpose must be liberally construed in furtherance of such
   purpose.   (Page 422.)

6. EMINENT DOMAIN—PROPERTY SUBJECT TO APPROPRIATION—JOINT
   USE—STATUTES.  Comp. Laws 1907, section 3590, subd. 3, provid-
   ing that property can only be condemned for a more necessary
   public use than the one for which it is already appropriated, refers
   to proceedings to dispossess owner of the property and deprive him
   of its use, and does not preclude condemnation of joint use of tun-
   nel not to interfere with use thereof by owner.  (Page 423.)

7. EMINENT DOMAIN—JOINT USE—COMPENSATION.  Where property is
   condemned for purpose of a joint use, compensation will be de-
   termined by the court according to rules of equity, where the
   parties cannot agree thereon.  (Page 424.)

8. EMINENT DOMAIN—JOINT USE—REGULATIONS.  Where property is
   condemned for purpose of joint use, and the parties cannot agree
   upon manner and extent thereof, regulations concerning such use
   will be made by the court in accordance with rules of equity.
   (Page 424.)

9. EMINENT DOMAIN—PROPERTY SUBJECT TO APPROPRIATION—EASE-
   MENT.  One easement may be superimposed on another easement
   through condemnation.[1]  (Page 426.)

10. EMINENT DOMAIN—BURDEN OF PROOF—CONDEMNATION OF LAND.
    Where the use of property is sought to be acquired by proceedings
    other than the exercise of power of eminent domain, the burden of
    proving that the use is a public use, and is necessary in the particu-
    lar case, is upon condemner.  (Page 426.)

--------

[1] *Salt Lake City* v. *Salt Lake Water, etc., Co.*, 24 Utah, 249, 67 Pac.
672, 61 L. R. A. 648; *Nash* v. *Clark*, 27 Utah, 158, 75 Pac. 371, 1 L. R.
A. (N. S.) 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300; *Tanner* v. *Canal
& Irr. Co.*, 40 Utah, 105, 121 Pac. 584; *Salt Lake City* v. *East Jordon
Irr Co.*, 40 Utah, 126, 121 Pac. 592.

11. EMINENT DOMAIN—JOINT USE—NECESSITY—EVIDENCE. In condemnation proceedings by mine owner to condemn right to joint use of a tunnel, evidence that the cost of construction of separate tunnel by condemner would be too great to permit of successful development of the mine *held* prima facie evidence of the necessity for such joint use. (Page 428.)

CORFMAN and McCARTY, JJ. Dissenting.

Appeal from the District Court of Salt Lake County, Third District; *Hon. P. C. Evans,* Judge.

Action by the Monetaire Mining Company against the Columbus Rexall Consolidated Mines Company and others.

Judgment for defendant named. Plaintiff appeals.

REVERSED and remanded.

*N. V. Jones* (*Wm. M. McCrea* and *P. L. Willams* of counsel) for appellant.

*Pierce, Critchlow & Barrette* for respondent.

FRICK, C. J.

The plaintiff, hereinafter called appellant, commenced this action against the Columbus Extension Mining Company, the Rexall Silver & Copper Mining Company, the Columbus Rexall Consolidated Mines Company, and Alexander H. Cowie to condemn a right to use a certain mining tunnel in common with the defendant the Columbus Rexall Consolidated Mines Company, a corporation, hereinafter. designated respondent. The defendants other than the respondent, for reasons appearing in the record, may be excluded from consideration on this appeal, and we shall not refer to them again.

The complaint is very long, and we shall, in the briefest possible terms, refer to those portions which are deemed material.

The appellant alleges that it is a mining corporation; that

its business is to own, acquire, work, and develop mining property; that the respondent is a corporation engaged in a similar business; that the appellant is the owner of a certain mining claim known as the "Haskel," which is marked "H" on the following plat:

It is further alleged that said mining claim contains gold, silver, copper, and other precious metals, and that for that reason it is a valuable mining claim, and that the same has been developed only in part; that a certain mining tunnel, marked "T T" on the plat, was constructed, and of which respondent is a part owner as hereinafter stated; that said tunnel, from its portal, marked "P" on the plat, to the south side line of appellant's said mining claim, marked "H," is approximately 3,078 feet in length, of which respondent owns all except 1,888 feet, which is that portion lying immediately south of the point marked "e" on the plat; that the whole length of said tunnel, from its portal to the end thereof, which is some distance north of the northerly side line of appellant's said mining claim, is approximately 4,700 feet; that the distance involved in this action, however, is that portion only which lies between the south side line of appellant's said mining claim and the point marked "e" on the plat, being a

distance of approximately 1,190 feet; that said tunnel passes through appellant's said mining claim about 1,200 feet below the surface of said claim; that the appellant has an agreement with the defendants, other than the respondent, whereby it is given the right to use said tunnel for said distance of 1,888 feet, together with the track and appliances therein, for the purpose of transporting the ores containing the precious metals aforesaid, and the waste material that may be produced in working and developing appellant's said mining claim, to the outer surface of said tunnel; that the respondent constructed said tunnel through appellant's said mining claim without authority therefor and without its consent, and in doing so uncovered and exposed large quantities of ores, much of which are being wasted for reasons fully set forth in the complaint; that the appellant desires to condemn the right to a temporary use of the 1,190 feet aforesaid, and the track or tramway therein, such use to be a use in common or joint use with respondent, and to be for the purpose of transporting the ores containing the precious metals aforesaid to the surface, and also to transport the waste material that may be developed in further developing the ores of said mining claim to the surface, and to take into appellant's said mining claim the tools and appliances necessary to work, and to develop the mineral deposits therein; that the appellant seeks to condemn the use of said tunnel, tracks, etc., as aforesaid for a limited period of time only, to wit, for a time sufficient to permit the appellant to mine and remove the ores containing such precious metals from its said mining claim; that said tunnel is not being used to its full capacity, and appellant avers that it is practicable to make arrangements so as to permit the appellant to use said tunnel, tracks, etc., to transport its said ores, etc., through said tunnel, "without materially injuring or damaging" the respondent. The complaint contains numerous other allegations of similar import, but, in view of what follows, we deem it unnecessary to go further into detail. The appellant prayed for the relief outlined in the complaint.

The respondent alone answered the complaint, and the hearing was limited to the appellant and respondent.

The answer is very long, containing twenty-five paragraphs. While many of appellant's allegations are denied in the answer, yet the principal purpose is to challenge the right of appellant to condemn the tunnel, tracks, etc., for the purposes aforesaid, or for any purpose.

The appellant produced evidence in support of the allegations of its complaint. The evidence is without dispute that the tunnel is not being used or operated to its full capacity, and that it is feasible and practicable to operate said tunnel so as to permit both the said respondent and the appellant to develop their respective mining claims and the mineral deposits therein, and to transport the ores developed and the waste material resulting from such development through said tunnel over a single track; that, if necessary, turnouts can be constructed at reasonable intervals and at reasonable expense in said tunnel, and side tracks can be laid in such turnouts so as to permit the transportation of the ores and waste material of both appellant and respondent without inconvenience or interruption; that the capacity of said tunnel is variously estimated at from 500 to 1,500 tons for two shifts each day, or even more, depending on the motive power by which the ores would be transported; and that said tunnel, at the time of the trial, was used to transport only a very small fraction of that amount. Indeed, the evidence is to the effect that the capacity of the tunnel is sufficient to develop and to transport the ores and waste material for at least three or four of the best mines in that vicinity.

We remark that the foregoing plat is not intended as correctly indicating the numerous courses of said tunnel. All that is attempted is to give the correct distances in feet and the general direction of the tunnel.

The theory of respondent's counsel, and upon which they tried the case, is best illustrated by what they said after the appellant had produced its evidence and rested its case. Counsel said that they did not desire to present any evidence "for the reason that the defendant (respondent here) is of the opinion and states with confidence that the law is that no right to condemn a right of way or easement through that tunnel has been or can be shown." Counsel therefore took

the position, and they insist upon it in this court, that regardless of the evidence that could be produced by the appellant the law would, nevertheless, always stand in the way of its right to condemn an easement in the tunnel for the purposes desired by it. It seems the district court entertained the same view, which, to some extent at least, is reflected in what are called the findings, which are as follows:

"The court heard the testimony introduced by the parties and arguments of counsel, and thereupon took the matter under advisement. And now, having fully considered the same, the court finds that the evidence in the cause is manifestly insufficient to support the allegations of the said complaint, and that the plaintiff is not entitled to recover against the defendant."

Upon those so-called findings the court entered judgment dismissing the action, and appellant insists that the court erred in its findings, conclusions of law, and judgment.

No one, we think, will seriously contend that the foregoing constitutes a finding of facts. It is a mere conclusion that the evidence is insufficient to authorize any relief without finding any fact or facts. The so-called findings, 1, 2 and the judgment based thereon, therefore, reflect the views of the court and of respondent's counsel, and, in legal effect, are the same as though the court had sustained a general demurrer to the complaint and had dismissed the action. We shall so treat the matter here.

We remark that the mining claim in question is an old patented claim located under the law of 1866, and is but 200 feet in width. The question to be determined on this appeal, therefore, is one of law merely, which may be stated thus: Can appellant, under our statute authorizing the exercise of eminent domain, condemn an easement in or the right to use the tunnel in question for the purposes desired by it?

Comp. Laws 1907, section 3588, as amended by chapter 47, Laws Utah 1909, p. 50, is divided into 13 subdivisions, in which are enumerated the specific purposes for which the right of eminent domain may be exercised. It is not necessary to set forth all of the purposes enumerated in the statute. So far as material here, the section referred to provides:

"Subject to the provisions of this chapter, the right of eminent domain may be exercised in behalf of the following public uses: * * * (6) Roads, railroads, tramways, tunnels, ditches, flumes, pipes, and dumping places to facilitate the milling, smelting, or other reduction of ores, or the working of mines, quarries, coal mines, or mineral deposits; outlets, natural or otherwise, for the deposit or conduct of tailings, refuse, or water from mills, smelters, or other works for the reduction of ores, or from mines, quarries, coal mines, or mineral deposits; milldams; natural gas or oil (pipe) lines, tanks, or reservoirs; also any occupancy in common by the owners or possessors of different mines, quarries, coal mines, mineral deposits, mills, smelters, or other places for the reduction of ores, or any place for the flow, deposit, or conduct of tailings or refuse matter."

Appellant contends that the right to condemn an easement in or through said tunnel for the purposes contemplated in this action is granted in the foregoing subdivision. Upon the other hand, respondent contends that the right is not granted.

Comp. Laws 1907, section 3590, subd. 3, also provides:

"Property appropriated to public use; provided, that such property shall not be taken unless for a more necessary public use than that to which it has been already appropriated."

Subdivision 5 of the section last referred to reads:

"All rights of way for any and all purposes mentioned in section 3588, and any and all structures and improvements thereon, and the lands held or used in connection therewith, shall be subject to be connected with, crossed, or intersected by any other right of way or improvement or structure thereon; they shall also be subject to a limited use in common with the owners thereof, when necessary; but such uses of crossings, intersections, and connections shall be made in the manner most compatible with the greatest public benefit and the least private injury."

And subdivision 6 is as follows:

"All classes of private property not enumerated may be taken for public use when such taking is authorized by law."

At the hearing of the cause in this court some contention was made that that portion of section 3588, supra, which we

have copied is not correctly printed in chapter 47, Laws Utah 1909, by which chapter said section was amended. We have carefully compared the language of subdivision 6 of the act as printed in chapter 47 aforesaid with the original act on file in the office of the Secretary of State, and we find that the only change is that in printing chapter 47 the word "pipe" is omitted between the words "oil" and "lines." The original act as passed reads "oil pipe lines," while the printed act reads "oil lines." There is no other difference between the original act as passed and the printed act. The question therefore is, Is the right sought to be exercised by appellant granted in any one or more of the foregoing provisions?

If the right is granted, the court has but one duty to perform, and that is to enforce it and make it effective. Upon the other hand, if the right is not granted, either in terms or by necessary implication, then the courts are powerless to grant the relief appellant seeks. In examining all of the subdivisions of section 3588 and of section 3590, one becomes convinced that it was the intention of the legislative power of this state to declare mining generally and the development of mines and mineral deposits a public use, in furtherance of which the right of the exercise of eminent domain was applied with full force and effect. This is apparent from the first enactment of the law of eminent domain as found in Laws Utah 1884, tit. 7, p. 348. Section 3588 has been amended and extended in some particulars ever since title 7 of 1884 was enacted. The intention of the Legislature to extend the right of eminent domain to mines and mining being clear and unequivocal, what is the rule respecting the construction and application that should be given to the acts of the Legislature in granting the right of eminent domain for the uses and purposes contemplated in the act?

If appellant's application merely involved the exercise of the right of eminent domain to construct a tunnel through, or a road or passageway over, respondent's mining claims, or the right to the use, in common with respondent, of any part of the latter's ground for dumping purposes, etc., no one would either question or doubt appellant's right

to condemn the right for such purposes. In view, however, that appellant seeks to obtain an easement merely in a tunnel owned by respondent, it is earnestly contended that no such right exists. By a careful reading and comparison of the several subdivisions aforesaid, it seems clear to us that the right of eminent domain may be exercised to condemn an easement in or through respondent's tunnel as contemplated by the appellant. A use in common is clearly contemplated for some purpose, and we think the purpose for which the appellant seeks to exercise the right in this case is included. That certainly is so if all of the provisions of our statute are given a fair and reasonable application and effect. In subdivision 6 of section 3588, which we have set forth, the power to condemn rights of way for tunnels is expressly granted; and in section 3590, subd. 5: "All rights of way for any and all purposes mentioned in section 3588 * * * shall also be subject to a limited use in common with the owners thereof, when necessary," etc. Tunnels, when necessary, are therefore subject to a limited use in common, precisely as are all other "rights of way" or easements mentioned in the statute. In view of the foregoing, what is the rule of construction applicable here?

We think it is generally agreed that where the right of eminent domain is granted for a particular purpose, then the statute must be given a liberal construction in furtherance of such purpose. Our statute, in clear and explicit terms, grants the right of eminent domain for the purpose of developing the mining industry and for the purpose of developing the mineral resources of the state, regardless of ownership. Under those circumstances, therefore, the rule of construction that is applied by Mr. Justice Hawley in the case of *Douglas* v. *Byrnes* (C. C.) 59 Fed. 28, should be applied. Mr. Justice Hawley, in passing upon the eminent domain act of the state of Nevada respecting the development of mines (C. C.) 59 Fed. at page 31, says:

"The power of the Legislature having been fully recognized and sanctioned, the purpose of the act should not be hampered by any narrow or technical objections. The importance of encouraging the mining industry of this state must be kept in view. This was the object,

intent, and purpose of the Legislature in passing the act, and its wisdom, policy, and expediency was thereby determined. A reasonable, fair, just, broad, and liberal view should be taken by the court in interpreting its provisions."

To the same effect is *Butte A. & P. R. Co.* v. *Montana U. R. Co.,* 16 Mont. 504, 41 Pac. 232, 31 L. R. A. 298, 50 Am. St. Rep. 508.

Mr. Lindley, in discussing the right of eminent domain as applied to mining, in his excellent work on Mines, in volume 1 (3d Ed.) p. 612, says:

"It is manifest, however, that there is a marked tendency, evolutionary in its nature, to break away from the old rigid rules on the subject of 'public use,' and to enlarge the definition of the term, so as to make it synonymous with 'public welfare.' This tendency is no doubt influenced to some extent by the growth and spread of sociological ideas which seek to influence the construction of constitutions and statutes in the interest of the group instead of the individual, and to authorize the condemnation of private property for any use which stimulates or encourages the development of the natural resources of the country. As to what uses will accomplish this purpose, each state must determine for itself. As there exist marked differences in environment and economic conditions, it is hardly likely that uniform decisions in all the states will ever be reached. But the test of 'public welfare,' instead of the old doctrine of 'public use,' is being gradually extended, with the promise of its becoming the prevailing doctrine in most jurisdictions."

It is contended that under Comp. Laws 1907, section 3590, subd. 3, property devoted to a public use can only be taken under the eminent domain statute "for a more necessary public use" than the one for which it is appropriated. That no doubt is the law, and, so far as we know, is generally enforced in this country. It must also be conceded that the use appellant seeks to make of the tunnel in question is not a more necessary use than the one respondent is making of it. Appellant, therefore, cannot succeed under the clause of the statute last referred to. What appellant seeks is not to appropriate respondent's tunnel and to dispossess the latter of its property rights therein or of its use, but what appellant seeks is to condemn the right to use the tunnel in common with the respondent; that is, to con-

demn the unused capacity of the tunnel. Where property is condemned for a more necessary use, the original condemner is deprived of his ownership and use. Such is not the case, however, where a second right to use the property or right of way is one in common with the present owner thereof. This distinction must be clearly kept in mind, and, if it is, no confusion can arise. In condemning the right to a joint use or a use in common, all that the condemner gets, or can get, is the right to use that which the present possessor or owner does not or cannot use. For example. If in this case respondent uses the tunnel in question to its full capacity, then there is nothing left to condemn, and, as a matter of course, appellant cannot prevail. Where, however, as clearly appears from the evidence in this case, a tunnel is not used by the owner and possessor thereof to its full capacity, and it is reasonably clear that a joint use or a use in common is practicable, then why may not the unused portion of the tunnel be condemned upon proper compensation being made to the owner and possessor thereof? In doing that the owner's property is not taken from him. Indeed, he is not even dispossessed of it nor deprived of its use or control, but the only thing that is done is that the owner must yield his exclusive dominion over it for what Mr. Lindley calls the "public welfare."

Counsel, however, state that there is no way to determine what the compensation shall be to the owner. It is, however, well settled that, where property may be condemned for the purpose of a joint use or a use in common,    7, 8 the whole matter of determining what is a reasonable compensation under all the circumstances, as well as the regulations respecting the use of the property, is determined and regulated according to the rules of equity. 2 Lewis, Eminent Domain (3d Ed.) section 423. When it is once settled and understood that the unused portion of a mining tunnel may be condemned and may be used to develop the mineral deposits in an adjoining mine, the respective mine owners will generally find no difficulty in arriving at some understanding respecting the character and extent of the compensation that shall be made for the use of the tunnel. Moreover, as a general rule, the respective owners will agree upon the manner

and extent of the use. If, however, the parties cannot agree the courts have full power to determine and fix the character and extent of the compensation, and to regulate the use of the tunnel between the parties. All this may be done after the court has heard the evidence and is in possession of all the facts and circumstances.

In view that the business of mining is necessarily highly speculative; that the prices of most metals are fluctuating so that to mine a certain grade of ore may be profitable this year while the price may be so much lower the next that it would be ruinous to attempt to mine it; that the contemplated ore bodies may be much smaller in extent than was expected; and numerous other things that might be mentioned—the joint use of a mining tunnel of necessity must be temporary only. It is for that reason that some equitable method of determining and fixing the compensation for the joint use must be devised which must be based upon all the known facts and circumstances, and must be such as to reflect justice in each case. To fix the compensation in a lump sum might defeat the very end in view. Some just method of compensation is all the law contemplates, and that is all that can be required in each case. It is manifest that in this case no effort whatever was made by appellant and respondent to arrive at an understanding regarding either the character or extent of compensation, nor with regard to the nature and extent of the use of the tunnel by appellant; and it is equally manifest that so long as the respondent can treat the tunnel in question as its own private affair, to which no one may gain access except by its consent, no such an understanding or agreement is possible.

Respondent's counsel, however, insist that it has been decided by respectable courts that the use of the tunnel contemplated by the appellant cannot be condemned under statutes similar to our own. The case of *Amador-Queen M. Co.* v. *Dewitt,* 73 Cal. 482, 15 Pac. 74, is cited and relied on. In that case the right to a joint use of the mining tunnel was denied upon the sole ground that the joint use which was sought was for a private and not for a public use. In view that the right of condemnation in cases of rights of way for

tunnels must be based upon the claim that the use of mining tunnels is a public use, it is not easy to see how the California court arrived at the conclusion aforesaid. It would seem that if the right of way for a tunnel may be condemned because such right contemplates a public use, then it must also follow that the operation of the tunnel would likewise constitute a public use. How, then, can it be said that a joint use is a private use? It would seem that no further comment is necessary.

It is, however, further contended that the decision of *Headrick v. Larson*, 152 Fed. 93, 81 C. C. A. 317, is decisive of the question involved here. It is contended that in that case it is squarely held that the joint use of a mining tunnel may not be condemned under an eminent domain statute similar to ours. It may be that the court which rendered the decision in that case may ultimately arrive at the conclusion contended for by counsel, but it is manifest that it did not do so in that case, all of which is demonstrated by having recourse to the language used by the court in deciding that case. After discussing the questions involved in that case at some length, Mr. Justice Gilbert, United States Circuit Judge, closes the opinion thus:

"But the present suit is not a suit to condemn a right of way over the tunnel. It is a suit in equity to compel the joint use of a right of way already condemned by another, and to obtain the right to participate in the benefits thereof, on the theory that the condemnation has been made for a public use, and that the applicants are members of the public for whom such condemnation has been adjudged. There is no allegation showing the necessity of such common use, and nothing to show that the appellants cannot proceed and condemn a right of way for a tunnel, as was done by the appellees."

It may safely be asserted, therefore, that all that is or could be decided in that case is that the plaintiffs had selected the wrong remedy. Upon the other hand, it has often been held by the courts of the highest respectability 9, 10 that one easement may be superimposed, so to speak, upon another. This is the doctrine of this court. *Salt Lake City v. Salt Lake Water, etc., Co.*, 24 Utah, 249. In that

case, at page 264, 67 Pac. at page 677 (61 L. R. A. 648), it is said:

"Under the statute of eminent domain the law seems to be well settled that, where two public uses can stand together without material impairment or impediment of one by the other, they must so stand."

That is the conclusion also of Mr. Chief Justice Shaw in the case of *Boston, etc., Co.* v. *Boston, etc., Co.*, 23 Pick. (Mass.) 360-398, where, in referring to the two uses there in question, the Chief Justice said:

"Both uses may well stand together, with some interference of the latter with the earlier, which may be compensated for by damages."

In principle is there, can there be, any difference between superimposing one public easement or use upon another public easement or use, as was done in the case last above cited, and in the cases of *Nash* v. *Clark*, 27 Utah, 158, 75 Pac. 371, 1 L. R. A. (N. S.) 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300, *Tanner* v. *Canal & Irr. Co.*, 40 Utah, 105, 121 Pac. 584, and *Salt Lake City* v. *East Jordan Irr. Co.*, 40 Utah, 126, 121 Pac. 592, and a case like that one at bar? The mere fact that in this case the tunnel in question is owned by respondent in no way affects the principle of law announced in the foregoing cases. In those, as in all other cases where it is sought to acquire property or rights other than by the exercise of the power of eminent domain, the burden of proof rests upon the condemner to show that the use is a public use, and that its exercise is necessary in the particular case. Both of those questions in this state must be determined by the court and both must be determined in favor of the condemner, as preliminary questions before the property or the right to an easement therein can be condemned. In view that the appropriation of property and the acquiring of an easement therein for the purposes of developing the mineral resources of this state have always been considered as being public uses, we cannot see any escape from the conclusion that the right that appellant seeks to acquire is clearly for the public use. Neither the allegations of the complaint nor the evidence produced in support thereof leave any room for doubt on that question.

The only other question, therefore, is, did the appellant show any necessity for the exercise of the right? As to that we are of the opinion that if the right to a joint use of the mining tunnel may be obtained at all by condemnation proceedings—and we are fully convinced that it may be—then the evidence is also, prima facie at least, sufficient to show that it is necessary for the appellant to have the joint use of the tunnel in question in order to develop and mine the ores in the Haskel mining claim. It seems that, if appellant cannot reach the mineral deposits in said claim through respondent's tunnel, the great cost of constructing a tunnel of its own will prevent it from ever successfully developing and removing said mineral deposits. What would be true in the case of appellant would be equally true with respect to any person to whom it might sell the mining claim, except possibly the respondent. It is too late now to insist that the people of both the state and nation are not interested in and benefited by the development of the mineral resources and wealth of both the state and the nation. The people are likewise interested in having the mineral resources developed at as little cost and expense as possible, since in no other way can the ores of the lower grades be developed and mined. As we view it, every element is present in this case which is required by our statute to authorize the exercise of the right of eminent domain. The district court therefore erred in making the so-called finding, in making the conclusion of law, and in entering judgment dismissing the action.

In conclusion we desire to state that there are many allegations in the complaint which to our minds seem unnecessary, while there are others that might well be more specific and certain. The same may be said of the answer. The defects in the pleadings are no doubt due to the fact that the law upon this question had never been settled by this court, and that both parties, if we may say so, were merely feeling their way.

For the reasons stated the judgment is reversed and the cause is remanded to the district court, with directions to grant the appellant a new trial, and to proceed with the case

in accordance with the views herein expressed.    Appellant
to recover costs on appeal.

THURMAN and GIDEON, JJ., concur.

CORFMAN, J.

I dissent.  It is conceded that appellant is not seeking to
exercise the right of eminent domain on the ground that
respondent's tunnel is to be used "for a more necessary pub-
lic use" than the one for which it was originally constructed,
and is now being continuously occupied and used in the opera-
tion and development of respondent's mines.  In fact, the only
contention made by appellant is that it seeks to acquire the
right to a mere temporary use, a use in common with the
respondent, for the express purpose of enabling appellant to
make quick development of its mineral lands, mine, extract,
and market its ores at a nominal expense, and with less in-
convenience to itself than under the circumstances and exist-
ing conditions could otherwise be done in the construction of
a tunnel by its own labor and at its own cost.    That the
contemplated use of the tunnel in question by appellant is
precisely the same use for which the respondent, at great ex-
pense, constructed it, and is now continuously using it in the
development and operation of its mines, is also a conceded
fact.  It is also apparent from the record here that appellant's
mine, for which a right to a joint use of respondent's tunnel
is sought, is only partially developed.  The same is shown to
be true of respondent's mine.  The mines of the respective
parties are in the prospective stages only.  Whether the ap-
pellant would pass one mine car of material from its mine
over respondent's track each day or a thousand is purely
problematical.  The future needs of respondent in that regard
are equally so.  Appellant's right to acquire an interest in
the tunnel must be predicated upon either some express legis-
lative enactment or some reasonable intendment of our stat-
ute, and then again some reasonable necessity for the taking
must first be shown.  Lewis, the distinguished author, in his
work on Eminent Domain, after an exhaustive review of the

decisions of the several states, lays down the general principle deducible therefrom to be:

"First. All property held for public use is still subject to the eminent domain power of the state, with this exception: That it cannot be taken to be used for the same purpose in the same manner. * * * The Legislature cannot take the property of A., such as a tollbridge, and transfer it to B., to be still used as a tollbridge by B. in the same manner as it had been previously used by A. This would be taking the property of A., and giving it to B., which the Legislature is powerless to do. 'Where there is no change in the use there cannot be a change in ownership under the law of eminent domain.' Suburban R. R. Co. v. Met. W. S. El. R. R. Co., 193 Ill. 217, 233, 61 N. E. 1090. This rule is a restriction upon the power of the Legislature, and is doubtless limited to the cases where the result of the act would be to transfer the property of A. to B., both being private individuals or corporations. * * *

"Second. The right to take property already devoted to public use must be given in express terms or by necessary implication, * * * and then the taking can be only to the extent of the necessity, and that necessity must arise from the nature of things over which the corporation desiring to take has no control, and not from a necessity created by such corporation for its convenience or economy." (Section 440.)

The same author, further on in the text, says:

"A taking which is no interference, present or prospective, with the prior use, is not within the rule. Consequently it is generally held that an easement or joint use may be appropriated, where the two uses are not inconsistent, and the second is no interference with or impairment of the first." (Section 441.)

I cannot concur in the conclusions arrived at by Mr. Chief Justice FRICK, that, under our statutes referred to in his opinion, the appellant may acquire a right to a temporary use in the respondent's tunnel, for the following reasons: (1) No contention is made, nor is it shown, that appellant has not now the same facilities to construct a tunnel for its mine that the respondent had to construct its tunnel. (2) The mere fact that appellant might more expeditiously, and with less expense and inconvenience to itself, develop and mine its ores by the use of respondent's tunnel, are not sufficient in law to entitle it to such use.

I am not unmindful that the future welfare of our commonwealth is largely dependent upon the development of the mineral resources of the state. However, as to the privi-

leges to be accorded those engaged in the mining industry, I feel assured our legislative bodies can be depended upon to see to it that wise laws will be enacted, in no uncertain terms, to foster and encourage the highest development of those interests not incompatible with the private rights of the citizen. It may be that some future legislative body of our state will take occasion to say, expressly or impliedly, by legislative enactment, that the miner who oftentimes ventures his all in delving into the mountainside in search for precious metals has no rights that his neighbors are bound to respect; that his neighbor may stand quietly by until such time as will be best suited to his own personal convenience and economy, and then be placed on an equality with respect to enjoyment of property rights with the one who has had the energy and courage to actually develop the resources of the state, by invoking the power of eminent domain through the medium of the courts; but, until the Legislature has so spoken in no uncertain terms, in my humble opinion the courts of the state should deny such privileges. The mere fact that the law of eminent domain has been amended and extended in recent years in many particulars relative to the mining interests, in a way calculated to foster and encourage the development of the mineral resources of the state, does not, in my judgment, warrant the courts in assuming that, under any and all circumstances, the privileges accorded may be held and enjoyed by mine owners in common. Similar rights sought for by appellant in this action were before the courts of California in *Amador, etc., M. Co.* v. *De Witt,* 73 Cal. 482, 15 Pac. 74, and of Idaho in *Headrick* v. *Larson,* 152 Fed. 93, 81 C. C. A. 317, and in both of these jurisdictions they were denied under similar statutes to our own. The hazards and uncertainties of mining, in my judgment, render a joint occupancy and use of a mining tunnel so impractical that it would be impossible for any court to fix and determine with any degree of certainty the terms and conditions under which a joint use could be had on any hypothesis that would be just and equitable, and no attempt ought to be made except in cases of extreme necessity. To construe our statutes as extending the right of eminent domain beyond cases of extreme

necessity would very materially retard the development of our mineral resources rather than encourage their development. It is a matter of common knowledge that immense sums of private money are being continually expended in the construction of tunnels for the purpose of demonstrating the character and extent of mineral deposits in the hope of some private gain. Some are successful, others result in failure and a total financial loss. In either event the burdens are met by those who have taken the initiative. If successful, they should be permitted to enjoy their property rights without interference of those who have stood by until such a time that they may advantageously invoke the law of eminent domain and secure for themselves, without hazarding their money, the same advantages and benefits with those who have, by their capital and enterprise, made it possible for them to do that. The trial court, in deciding the case at bar, had before it all of the testimony offered by the appellant, and, while it did not make specific findings the effect of the judgment was to deny the right sought for by appellant. Had the court made specific findings negativing appellant's right the result would have been precisely the same, and therefore the failure of the trial court to do so becomes immaterial. In my opinion, the judgment of the trial court was right and should be affirmed.

McCARTY, J. I concur in the reasoning of, and in the conclusions reached by, Mr. Justice CORFMAN, J.

On Application for Rehearing.

FRICK, C. J.

Respondents' counsel have filed a petition for a rehearing. While a number of grounds are stated in the petition, yet nothing really new is advanced.

Counsel, in their brief, however, argue with much vigor that the decision, if permitted to stand, will have disastrous results for many reasons. Indeed, the arguments advanced, in their nature and essence, differ little from those advanced in opposition to the decisions in *Munn* v. *Illinois*, 94 U. S. 113,

24 L. Ed. 77; *Highland Boy Mining Co.* v. *Strickley,* 28 Utah, 215, 78 Pac. 296, 1 L. R. A. (N. S.) 976, 107 Am. St. Rep. 711, 3 Ann. Cas. 1110, affirmed in 200 U. S. 527, 26 Sup. Ct. 301, 50 L. Ed. 581, 4 Ann. Cas. 1174; *Nash* v. *Clark,* 27 Utah, 158, 75 Pac. 371, 1 L. R. A. (N. S.) 208, 101 Am. St. Rep. 953, 1 Ann. Cas. 300, affirmed in 198 U. S. 361, 25 Sup. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171; *Dayton Mining Co.* v. *Seawell,* 11 Nev. 394; *Overman S. M. Co.* v. *Corcoran,* 15 Nev. 147; *Butte A. & P. Ry. Co.* v. *Montana U. Ry. Co.,* 16 Mont. 504, 41 Pac. 232, 31 L. R. A. 298, 50 Am. St. Rep. 508; *Ellinghouse* v. *Taylor,* 19 Mont. 468, 48 Pac. 757; *Hand Gold Mining Co.* v. *Parker,* 59 Ga. 419; *Tanner* v. *Canal Co.,* 40 Utah, 105, 121 Pac. 584; and *Salt Lake City* v. *Irrigation Co.,* 40 Utah, 126, 121 Pac. 592. While the decisions in some of the foregoing cases are merely analogous to the case at bar, those in the others, and especially those in the mining cases, practically cover the same ground that is covered by the case at bar. When the decisions in those cases were first announced no doubt the consequences were quite as startling to contemplate to many as counsel assert the "consequences are * * * startling to comtemplate" in the case at bar. We assert, however, with the utmost confidence, that the doctrine announced in the case at bar is in perfect harmony with the doctrine announced in the foregoing cases.

It is contended, however, that if the decision prevails "any railroad company having a line of road, such, for instance, as the one between Salt Lake City and Park City, or between Salt Lake City and Wendover, may be used in common with the present owners so long as the necessity or convenience of the condemning road might demand. To the objection that such a use was in reality a taking of the road to all practical intents and purposes, the answer would be that, so long as it was open to the use of the real owner to the extent of his demands, the court would see to it that any other railroad company might have a common or joint use up to the limit of its capacity." The foregoing, no doubt, are some of the consequences which, to counsels' minds, are "startling to contemplate." Let us assure counsel and all other timid persons that no such startling consequences can or will result from the

decision. Indeed, in this state it would be utterly impossible to bring about such consequences. Our Constitution has made that quite unnecessary. In section 12 of article 12 of our Constitution it is provided:

"All railroads and other transportation companies are declared to be common carriers, and subject to legislative control; and such companies shall receive and transport each other's passengers and freight without discrimination or unnecessary delay."

The necessity of condemning a joint or use in common of a railroad can, therefore, never arise in this state for the mere purpose of transporting freight or passengers, even though the law permitted one enterprise to condemn the easement of another for mere speculative purposes. The necessity for condemning a joint use may, perhaps, arise in some instances for terminal purposes. When it arises, however, it no doubt will be limited to the actual necessities of the condemning company, and the matter may then be judicially determined. There is little doubt that if the principle that is embodied in the section of our Constitution which we have quoted had been announced at any time prior to the decision of *Munn* v. *Illinois,* supra, which was announced in 1876, it would have been more startling to very many persons than is the decision in the case at bar. Counsel's fears regarding what might happen to our railroads are therefore groundless.

It is also suggested that under the decision as it stands one mine owner might be permitted to condemn a joint use of a mine shaft. This suggestion, it seems to us, is made for the purpose of showing that the decision is impractical and hence unsound. Such a suggestion is, however, not justified by anything that is said in the opinion nor by anything contained in our statute. There always is, and of necessity must be, connected with every mine shaft in operation a certain amount of machinery and appliances. There is nothing in our statute authorizing the condemnation of mine machinery or appliances. It might with as much force be contended that because the joint use of the tracks of one railroad company may be condemned for a limited purpose a joint use of its machinery, tracks, cars, depots, depot offices, and warehouses

may therefore be condemned. Such a result does not at all follow, and the joint use really contemplated by the statute should not be denied merely because it is assumed that the doctrine might be carried too far. It may well be, however, that an abandoned mine shaft, or one no longer in use, from which the owner has removed his machinery and appliances, could be the subject of condemnation. These matters are, however, not now involved except for the purpose of illustration, and hence are not and cannot be decided.

It is further insisted that no rule regarding the measure of damages is laid down in the opinion. As indicated in the decision, no hard and fast rule can be promulgated in that respect. It cannot be determined in advance what method for the ascertainment of compensation should be adopted in all cases. Whether payment should be made on the basis of tonnage, or by the day or month, or otherwise, must be determined by the court from the evidence of experts, of whose knowledge and experience courts constantly avail themselves. Many of the elements arising in joint or common use of property are suggested in the case of *Salt Lake City* v. *Irrigation Co.*, supra. If the experience of experts is followed, no great difficulty, if any at all, can arise in that regard.

But we are also told that we have not defined what constitutes necessity in such cases. That, too, is largely a question to be determined in each case. We have stated the facts as they appear from the evidence, and from those facts we did all that could be done in the opinion, namely, state our conclusion, which is that the facts constitute a prima facie case of necessity in a case like the one at bar.

It is also asserted that the decision will retard rather than stimulate the development of mining property, because it will permit one mine owner to divide the use of his tunnels, and will thus tend to discourage the construction of mine tunnels. That is certainly a gloomy view to take of the matter. Why should men refuse to develop their own mining property simply because another, by making adequate compensation, may, for a limited time and to a limited extent, use what the owner cannot use?

The argument, as we understand it, is based upon the

theory that the tunnel belongs to the owner, and that no one should be permitted to interfere, and if, forsooth, the law permits such interference, even for adequate compensation and for a limited time only, tunnels will no longer be run into our mountains. Every one knows, however, that in any event the instances where the necessity exists for one mine owner to condemn a joint use of another's tunnel are not numerous; but, even though they were, no one would refuse to develop a promising mining property merely because some one, after making adequate compensation to the owner, might be given the right to a joint use of the tunnel for a limited time under the direction and supervision of a court of justice. All of us acquire and hold much of our property subject to the right of eminent domain, yet no one refuses either to acquire or to improve his property because of that fact. Counsel's fears in that respect are quite as groundless as they are in all other respects.

Finally, it is insisted that the opinion in many respects is vague and uncertain. Indeed, counsel who have filed the petition contend that they are unable to grasp either its meaning or its purpose. If it were not for the fact that counsel on the other side have found no difficulty whatever to fully comprehend all that is said and all that is decided in the opinion we might regard the contention as more serious. The contention is, however, one that is frequently found in applications for rehearings. The attorney who loses the case can rarely be reconciled to a decision which is strongly contrary to his contentions. The zeal for his client's cause, which is commendable if kept within bounds, prevents him from seeing what others see and from understanding what others readily understand.

The application for a rehearing in this case differs from the applications in ordinary cases only in that this case is perhaps of greater importance than the ordinary case and in that the decision is by a divided court. That, however, standing alone, is not sufficient reason why the decision should not stand. The majority of this court must assume the responsibility for a decision, and, after having fully considered the questions presented in the application for a rehearing and

the arguments from every point, we see no good reason why the opinion should not be adhered to.

The petition for a rehearing is therefore denied.

THURMAN and GIDEON, JJ., concur.

McCARTY and CORFMAN, JJ., dissenting.